Jack Meyerson, Esq. (No. 16405)
Matthew Miller, Esq. (No. 309791)
MEYERSON & MILLER
1600 Market Street, Suite 1305
Philadelphia, PA 19103
(215) 972-1376
jmeyerson@meyersonlawfirm.com
mmiller@meyersonlawfirm.com

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| RAJ KATARIA, HEENA BHANUSHALI, and FIVE STAR CIGAR CORPORATION, | : | Civil Action |
|  | : |  |
| Plaintiffs, | : | No. |
|  | : |  |
| v. | : |  |
|  | : |  |
| SYED IMRAN BOKHARI, SHALINDER NICHANI, AMIR WAQAR AHMED, MOHAMMAD ILLAHI, and NORTHEASTERN WHOLESALE ENTERPRISES, LLC, | : | |
|  | : | JURY TRIAL DEMANDED |
| Defendants, and, | : |  |
|  | : |  |
| FIVE STAR CIGAR CORPORATION, | : |  |
|  | : |  |
| Nominal Defendant. | : |  |

## COMPLAINT

Plaintiffs Raj Kataria, Heena Bhanushali, and Five Star Cigar Corporation, complaining

of the Defendants Syed Imran Bokhari, Shalinder Nichani, Amir Waqar Ahmed, Mohammad

Illahi, and Northeastern Wholesale Enterprises, LLC, hereby aver as follows:

## NATURE OF ACTION

1.    This action involves direct and derivative claims that arise from a fraudulent

scheme perpetrated by Defendants Syed Imran Bokhari ("Syed") and Shalinder Nichani

("Shelly"), along with their co-conspirators, Defendants Amir Waqar Ahmed ("Amir") and Mohammad Illahi ("Mohammad"), whereby they induced Plaintiffs Raj Kataria ("Raj") and Heena Bhanushali ("Heena") (collectively "Individual Plaintiffs") to invest over $600,000 toward the creation of a new corporation, Plaintiff Five Star Cigar Corporation, that Defendants Syed and Shelly utilized, among other things, to obtain free or discounted inventory for their separately owned business, Defendant Northeastern Wholesale Enterprises, LLC ("Northeastern"), and to avoid paying taxes to the State of Connecticut.

2.      The individual parties to this case are all involved in the cigar and tobacco industry. Plaintiffs Raj and Heena both own small cigar shops while Defendants Syed and Shelly operate Defendant entity Northeastern, a cigar wholesaler based out of Connecticut. Defendants Syed and Shelly act as the principal owners and operators of Northeastern even though the business was incorporated in the names of their family members Sayed Mueez Bokhari, Ashok N. Nichani, and Syed Mazhar Bokhari.

3.      The cigar and tobacco industry is subject to a high level of regulatory oversight, with the federal government controlling the manner in which tobacco products are bought, sold, and shipped in interstate commerce and each state imposing particular licensing requirements and excise taxes. In relevant part, the State of Connecticut imposes an excise tax on premium cigars equal to 50% of the wholesale cost per cigar, although the amount of the tax is capped at $.50 per cigar sold. Pennsylvania is unique in that it does not impose an excise tax on premium cigars.

4.      Defendant Syed is especially well-acquainted with the regulatory and legal framework governing the tobacco industry. In 2014, a grand jury in the Federal District Court for the District of Massachusetts returned a 32 count indictment alleging that Syed had engaged in a

scheme to defraud the federal government and the tax authorities of Massachusetts and Connecticut. The detailed indictment explained how Syed set up two tobacco businesses in Massachusetts and Connecticut as well as a third wholesale business in Pennsylvania. The Pennsylvania company would obtain product and store it at its warehouse location, then sell the product for cash to the Massachusetts and Connecticut businesses. Syed and his co-conspirators would then create fake invoices or underreport the amount of product shipped to Massachusetts and Connecticut in order to avoid paying the excise taxes imposed by those states. As part of the scheme, and as a means of avoiding detection, Syed listed his associates as the nominal owners of these businesses. Syed pleaded guilty to violating the Prevent All Cigarette Trafficking Act, 15 U.S.C. §375 *et seq.*, a felony, and was sentenced to a 1 year term of probation on August 11, 2022.

5.    Plaintiff Raj first met Defendant Syed in or around Fall of 2023. In March 2024, Raj and Plaintiff Heena attended a cigar industry trade show in Las Vegas, where Raj introduced Heena to Defendant Syed.  Plaintiff Raj had previously told Syed that he was interested in starting a new premium cigar online retail business with Plaintiff Heena and Syed had expressed an interest in joining the venture. Raj, Heena, and Syed agreed to investigate the feasibility and logistics of the new business with a goal of commencing operations in the near future. Syed explained to Plaintiffs that Pennsylvania's lack of a premium cigar excise tax made it an ideal location for the new business venture. The parties agreed that Raj and Heena would invest a combined $400,000 into the new business and Syed would do the same, except that Syed's investment would be made in whole or in part by providing merchandise, equipment, and paying expenses of the business.

6.      Plaintiff Raj and Defendant Syed met again in April 2024 to further discuss the proposed new business venture. Syed introduced the idea that they should form two businesses, an online retailer and a second entity that would operate as a wholesaler. The wholesale business would utilize its superior buying power to obtain inventory at discounted rates for the retail business. Buying product through the wholesale entity would also give them access to discount and rebate programs offered by cigar manufacturers for large purchasers. The parties agreed in principle to implement the plan to incorporate a wholesale business and a retail business in the Commonwealth of Pennsylvania.

7.      In order to fund the new business venture, Defendant Syed explained that he would include his partner in Northeastern, Defendant Shelly, as an investor, shareholder, and officer.  Since the wholesale wing of the new venture would require a warehouse and additional equipment, Syed insisted that the parties increase the amount of their initial investment so that Raj and Heena would now be required to provide $600,000 instead of $400,000, while Syed and Shelly would contribute $600,000 each.

8.      In June 2024, the parties incorporated two entities in Pennsylvania, Plaintiff Five Star Cigar Corporation ("Five Star") and Premium Cigars Depot Corporation ("Premium Cigars"). As the parties had discussed, Plaintiff Five Star would operate a warehouse and serve as the wholesale wing of the business while Premium Cigars would operate as an online retailer. Shortly thereafter, Syed brought two additional investors to the enterprise, Defendants Amir Waqar Ahmed ("Amir") and Mohammad Illahi ("Mohammad"), two of his industry contacts who owned and operated WMD Trading, Inc. ("WMD"), a wholesale tobacco business based in Maryland. According to Defendants Syed and Shelly, Defendants Amir and Mohammad were each required to contribute $600,000 to the business.

9.    The parties secured a commercial lease for the Five Star warehouse on August 6, 2024, and began to implement their business plan. Even though Plaintiff Raj was designated as the President of Five Star and Premium Cigars, Defendants Syed and Shelly set up the company communication infrastructure and accounts in a manner that prevented Raj from gaining full access to the corporate accounts, books, and records. When the parties applied for a license to sell tobacco in the Commonwealth of Pennsylvania, Defendant Syed had his son, Syed Mazhar Bokhari, likely out of concern that an application in Syed's name would be rejected as a result of his prior felony conviction.

10.    Over the next several months, Plaintiffs Raj and Heena invested approximately $640,000 into the business. However, at Defendant Syed's insistence, the first $300,000 of Plaintiffs' investment was provided directly to Northeastern. Syed misrepresented that investment deposits should initially be funneled through Northeastern because large deposits into an account held by the new business would raise red flags with the bank. He also misrepresented that all of the funds deposited into the Northeastern account would be utilized for the operation and benefit of Five Star and Premium Cigars. On occasions when investments were made directly to Five Star's account, as is described in more detail below, Defendants Syed and Shelly promptly transferred the bulk of the funds obtained from Plaintiffs to Northeastern.

11.    Instead of applying Plaintiffs' funds toward Five Star and Premium Cigars as promised, Defendant Syed, along with his co-conspirator and co-Defendant Shelly, began a fraudulent scheme highly similar to that described in the 2014 criminal indictment whereby they used the Pennsylvania businesses to enrich themselves and their separately owned entity, Northeastern.  More specifically, instead of purchasing product directly through Five Star, Defendants would transfer funds from Five Star to Northeastern and purchase wholesale

inventory in the name of Northeastern while instructing that the merchandise be shipped to Five

Star's warehouse in Pennsylvania. As the purchaser of the inventory, Northeastern would receive

valuable rebates, discounts, and access to special edition merchandise that manufacturers made

available to large purchasers. The rebates and discounts claimed by Northeastern could be as

much as 20-30% of the total cost of the goods purchased. Five Star would have received these

perks if the purchases were made directly and not funneled through Northeastern by Defendants

Syed and Shelly. Also, by shipping the merchandise to Pennsylvania, Defendants were able to

avoid paying the Connecticut excise tax.

12.     On one or more occasions, Defendants have shipped inventory from the Five Star

warehouse to the Northeastern warehouse without providing documentation or explanation for

what goods were being transferred and whether the transfers were supported by consideration. In

order to obfuscate their actions, Defendants Syed and Shelly installed an employee of

Northeastern, Usha Shree, to oversee the operations at the Five Star warehouse and ensure that

any invoices or ledgers reflecting the movement of goods to and from Northeastern could be

discarded or manipulated in order to understate the amount of inventory going to Northeastern

and avoid paying the full measure of the Connecticut excise tax. In this manner, Defendants were

also able to sell inventory purchased for Five Star through Northeastern.

13.     When Plaintiff Raj, in his capacity as President of Five Star and Premium Cigars,

became concerned that the funds invested by him and his sister were being misappropriated, and

that Defendants Syed and Shelly were using the Pennsylvania companies to avoid paying taxes

due to Connecticut from Northeastern, he demanded full access to the books and records of Five

Star. Instead of granting that access, the other shareholders in the businesses, Defendants Syed,

Shelly, Amir and Mohammed, voted to remove Raj as President on January 17, 2025 and entirely froze him out from taking part in the business.

14.    As is set forth in more detail below, Plaintiffs Raj and Heena seek compensation for the approximately $640,000 they invested that was misappropriated and utilized for the benefit of Defendants Syed, Shelly, and Northeastern. Plaintiff Raj also seeks damages for breach of fiduciary duty and minority shareholder oppression under the Pennsylvania Minority Shareholder Act, 15 Pa.C.S. §1767. Plaintiffs also bring a claim derivatively on behalf of Five Star to recover the embezzled funds that Defendants gave to Northeastern, as well as the benefits wrongfully conferred on Northeastern in the form of tax avoidance, manufacturer rebates, access to special edition merchandise, and transfers and sales of goods for which Five Star received no consideration or partial compensation. Finally, Plaintiffs seek preliminary injunctive relief in the form of an Order freezing certain accounts and assets of Five Star and Northeastern and the imposition of a constructive trust over funds and goods that were wrongfully transferred to Defendants.

## JURISDICTION AND VENUE

15.    This Court has jurisdiction pursuant to 28 U.S.C. §1332 in that the dispute is between citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

16.    Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1391(b)(1) and (2) because Defendants operate a wholesale distribution company within this judicial district and because the events giving rise to these claims occurred within this judicial district.

## PARTIES

17.    Plaintiff Raj Kataria ("Raj") is an adult citizen of the State of New York residing at 8 East Valley Stream Blvd., Valley Stream, NY 11580. Plaintiff Raj is a 20 percent shareholder of Five Star Cigar Corporation and served as the President of Five Star prior to being terminated by Defendants.

18.    Plaintiff Heena Bhanushali ("Heena") is an adult citizen of the State of New Jersey residing at 260 Westervelt Lane, Mahwah, NJ 07430. Plaintiff Heena is the sister of Plaintiff Raj and an investor in Five Star and Premium Cigars.

19.    Plaintiff Five Star Cigar Corporation ("Five Star") is a corporation organized under the laws of the Commonwealth of Pennsylvania on or about June 25, 2024, with a principal address of 7950 State Road, Philadelphia, PA 19136. Plaintiff Raj and Defendants Syed, Shelly, Amir, and Mohammad are all 20 percent shareholders of Five Star.

20.    Defendant Syed Imran Bokhari ("Syed") is an adult citizen of the State of Connecticut residing at 314 Old Farms West, Middletown, CT 06457. Defendant Syed is a 20 percent shareholder in Plaintiff entity Five Star Cigar Corporation and is the controlling officer and shareholder of Defendant Northeastern Wholesale Enterprises, LLC, the entity that received a substantial portion of the funds that were embezzled from Plaintiffs. On August 11, 2022, Defendant Syed pleaded guilty to a felony count of violating the Prevent All Cigarette Trafficking Act.

21.    Defendant Shalinder Nichani ("Shelly") is an adult citizen of the State of Connecticut residing at 25 Windabout Drive, Greenwich, CT 06831. Defendant Shelly is a 20 percent shareholder of Plaintiff entity Five Star Cigar Corporation and manager of Defendant Northeastern, along with Defendant Syed.

22.     Defendant Amir Waqar Ahmed ("Amir") is an adult citizen of the State of Maryland residing at 5424 Wecker Way, Elkridge, MD 21075. Defendant Amir is a 20 percent shareholder of Plaintiff entity Five Star Cigar Corporation and acted in concert with Defendants Syed, Shelly, and Mohammad in freezing out Plaintiffs from taking part in the ownership and management of Five Star.

23.     Defendant Mohammad Zaheer Illahi ("Mohammad") is an adult citizen of the State of Maryland residing at 3111 Stiles Way, West Friendship, MD 21794. Defendant Mohammad is a 20 percent shareholder of Plaintiff entity Five Star Cigar Corporation and acted in concert with Defendants Syed, Shelly, and Amir in freezing out Plaintiffs from taking part in the ownership and management of Five Star.

24.     Defendant Northeastern Wholesale Enterprises, LLC ("Northeastern") is a Connecticut limited liability company with its principal address located at 222 Universal Drive Unit #5, North Haven, CT 06473. Northeastern is a tobacco wholesaler and is authorized to do business and does business in the State of Connecticut. Defendants Syed and Shelly, citizens of Connecticut, are active members and operators of Northeastern. Even though Syed and Shelly are the effective owners and operators of the company, Northeastern was incorporated under the names of Defendants' family members, Syed Mazhar Bokhari, Sayed Mueez Bokhari, and Ashok N. Nichani.

**OPERATIVE FACTS**

25.     In or around January 2024, Plaintiff Raj visited Defendant Syed at the Northeastern warehouse in Connecticut to discuss Raj's proposal of collaborating to start an online retail business selling premium cigars.

26.     Plaintiff Raj and Defendant Syed both had prior experience in the premium cigar and tobacco industry.

27.     Defendant Syed suggested that the business should be incorporated and establish a warehouse in the Commonwealth of Pennsylvania due to its favorable tobacco tax laws and proximity to large markets in New Jersey and New York.

28.     After meeting with Defendant Syed, Plaintiff Raj began researching potential warehouse locations in Pennsylvania and providing information on the potential sites to Defendant Syed.

29.     In March 2024, Plaintiff Raj and his sister Plaintiff Heena attended a cigar trade show in Las Vegas, Nevada, where he introduced her to Defendant Syed and explained that Heena would also invest in the proposed online retail business.

30.     Plaintiffs Raj and Heena agreed to scout potential locations for a warehouse to store the goods for the online retail business and to send information to Defendant Syed for review and approval.

31.     It was further agreed that Raj and Heena would invest a combined $400,000 in the business and that Syed would do the same, except that Syed would be permitted to make his contribution through in kind investments of merchandise and payment of start-up expenses.

32.     In or around April 2024, Defendant Syed proposed to Plaintiff Raj that they should form a second corporation for wholesale cigar sales because a wholesale business would have superior buying power to the online retail business, and could obtain manufacturer discounts and rebates offered exclusively to large buyers that could be passed to the online retail business.

10

33.     In or around May and June 2024, Defendant Syed announced to Plaintiff Raj that his business partner in Northeastern, Defendant Shelly, would be joining the new business venture as an investor and officer. Defendant Syed insisted that the initial investment amount to which they had previously agreed would have to be increased to fund the wholesale business. The parties agreed that Raj and Heena would contribute a combined $600,000 and that Defendants Syed and Shelly would invest $600,000 each.

34.     At all times relevant hereto, Defendants Syed and Shelly contemporaneously operated Defendant entity Northeastern, a tobacco wholesaler located in Connecticut. Northeastern was incorporated under the names of Defendants' family members, Syed Mazhar Bokhari, Sayed Mueez Bokhari, and Ashok N. Nichani.

35.     In June 2024, the parties incorporated two entities in Pennsylvania, a wholesale business, Plaintiff Five Star and Premium Cigars, an online retail business.

36.     On or before June 17, 2024, in order to increase the start-up capital available to the businesses, Defendants Syed and Shelly informed Plaintiffs that they were going to bring two more shareholders, Defendants Amir and Mohammad, each of whom would contribute $600,000.

37.     At all times relevant hereto, Defendants Amir and Mohammad owned and operated WMD Trading, Inc. ("WMD"), a wholesale tobacco business based in Maryland.

38.     Before joining Five Star, Defendants Amir and Mohammad had a prior relationship with Defendants Syed and Shelly because WMD did business with Northeastern.

39.     While the parties engaged in the process of incorporating Five Star and setting up the warehouse, Defendant Syed insisted that the shareholders deposit their investments into an

account held by Northeastern until the Pennsylvania corporations were ready to begin doing business.

40.    On June 21, 2024, Plaintiff Heena transferred $100,000 to Defendant Northeastern's bank account and provided an additional $100,000 in cash to Defendant Syed at the Northeastern warehouse as part of Plaintiffs' contribution to the new business venture.

41.    On July 30, 2024, the corporate bylaws of Five Star were executed. The corporate bylaws provide that Plaintiff Raj and Defendants Syed, Shelly, Ahmed, and Illahi are the five shareholders of the business with each holding a 20% interest.

42.    The shareholders of Five Star agreed that Plaintiff Raj would serve as the President of the Corporation and Defendant Shelly would be the Secretary.

43.    Despite investing in the business, Plaintiff Heena was not included in the distribution of shares, but it was understood by all parties that she had contributed capital and would be working closely with Plaintiff Raj in his capacity as president of the corporation.

44.    On August 6, 2024, Five Star executed a commercial lease agreement for a warehouse located at 7950 State Road, Philadelphia, PA 19136, which would serve as a storage facility for merchandise owned by Five Star and Premium Cigars.

45.    Upon executing the lease, Five Star purchased a Honda minivan and a Dodge delivery van and hired a racking company to construct a humidor, finish the warehouse interior, and provide the technological infrastructure for the warehouse. Defendant Syed told Plaintiffs that he was making his investment in Five Star by paying such expenses as they were incurred, but he consistently misrepresented and inflated the amounts of the expenses he was allegedly paying. For example, Syed misrepresented that he paid $12,000 and $18,000 to purchase the

Honda minivan and the Dodge delivery van for Five Star, but Plaintiffs learned subsequently that the actual purchase prices were $4,500 and $7,500, respectively.

46.     On August 23, 2024, the five shareholders executed corporate resolutions for Five Star and Premium Cigars officially designating Plaintiff Raj as the President of each corporation, while Defendants Syed, Shelly, Amir, and Mohammad would serve as the Vice President, Secretary, Treasurer, and Assistant Secretary, respectively.

47.     On August 26, 2024, Plaintiff Heena provided an additional investment of $100,000 via a wire transfer to Northeastern. Even though a bank account for Five Star had been opened, Defendant Syed instructed Plaintiff Heena to transfer the funds to Defendant Northeastern's bank account instead. Defendant Syed justified this instruction by telling Plaintiff Heena that such a large deposit into a new bank account would raise red flags for financial authorities.

48.     At all times material hereto, Defendant Syed maintained control and check-writing authority over the Five Star bank account and was solely in charge of purchasing inventory for Five Star.

49.     In order to convince Plaintiff Heena to pay her August 26, 2024 investment to the Northeastern account, Defendant Syed told her that Defendants Amir and Mohammad had made an investment by transferring $500,000 to the Northeastern account, although Plaintiffs have not been able to confirm that this transfer actually occurred.

50.     Also in August 2024, Defendant Syed made a deposit of $300,000 into the Five Star account. However, on August 27, 2024, shortly after making the deposit, he transferred $225,000 from the Five Star account to the Northeastern account.

13

51.     Plaintiffs were not contemporaneously aware of the August 27, 2024 transfer of $225,000 to Northeastern because they were not permitted to view Five Star books and records of account, despite Plaintiff Raj's status as President of the company. They discovered the transfer in or around January 2025 when Raj was given partial information regarding the Five Star accounts.

52.     During the time period of May through August 2024, Individual Plaintiffs assisted in performing the work of setting up the businesses but at all times acted under and in accordance with instructions from Defendants Syed and Shelly.

53.     On September 13, 2024, the shareholders of Five Star submitted an application for a Pennsylvania manufacturer/wholesaler license, with each executing a consent form to attach to the application.

54.     Defendant Syed, out of apparent concern that his prior felony conviction would cause the license application to be denied, had his son, Syed Mazhar Bokhari, execute the consent form on his behalf. Syed Mazhar Bokhari is the nominal holder of an ownership interest in Defendant Northeastern but has no association with Five Star.

55.     Beginning in October 2024, Defendants Syed and Shelly repeatedly solicited investments from the other shareholders only to transfer the funds received to Defendant Northeastern.

56.     On October 24, 2024, Defendants Amir and Mohammad, through WMD Trading, Inc., transferred $600,000 to Five Star. On October 25, 2024, Defendant Syed wrote a check for $386,000 from Five Star to Northeastern.

14

57.    On October 28, 2024, Plaintiff Heena deposited $100,000 into the Five Star account. On October 29, 2024, Defendant Syed wrote a check for $185,000 from Five Star to Northeastern.

58.    On November 6, 2024, Plaintiff Heena transferred an additional $100,000 to the Five Star account. That same day, Defendant Syed wrote a check for $210,000 from Five Star to Northeastern.

59.    In total, Plaintiffs made the following investments into the new business venture:

| June 21, 2024 | Plaintiff Heena | $100,000 | Wired to Northeastern |
| June 21, 2024 | Plaintiff Heena | $100,000 | Cash to Deft. Syed |
| August 26, 2024 | Plaintiff Heena | $100,000 | Wired to Northeastern |
| October 28, 2024 | Plaintiff Heena | $100,000 | Wired to Five Star |
| November 6, 2024 | Plaintiff Heena | $100,000 | Wired to Five Star |

60.    As is stated in more detail below, Plaintiffs provided a further investment in kind by paying $134,968.47 to purchase a residential property in the name of Five Star. On three occasions, Plaintiffs also paid for hotel rooms for Five Star employees, the total cost of which was $1,108.45. The total investment made by Plaintiffs is accordingly $636,076.92.

61.    Defendant Syed executed at least the following four payments, totaling $1,006,000, from Five Star to Northeastern without creating or retaining invoices or any other reliable record of why the payments were made:

| August 27, 2024 | Five Star | $225,000 | Check to Northeastern |
| October 25, 2024 | Five Star | $386,000 | Check to Northeastern |

| October 29, 2024 | Five Star | $185,000 | Check to Northeastern |
| November 6, 2024 | Five Star | $210,000 | Check to Northeastern |

62.     In early November 2024, Plaintiff Raj became aware that inventory was being delivered to Five Star without corresponding invoices. On or about November 7, 2024, Raj called Defendant Syed seeking information regarding the inventory that was being delivered to and stored in the Five Star warehouse. Specifically, Plaintiff Raj asked to view invoices in order to understand where the merchandise was coming from and how much merchandise was being held in the warehouse, and to confirm that Five Star received everything it had paid for. Raj also wanted to verify that the other shareholders had made their investments as had been represented by Defendant Syed.

63.     Instead of providing information to Plaintiff Raj, Defendant Syed became angry and ceased most communications with Plaintiffs. From this point forward, Defendants usually interacted with Plaintiffs only through Defendant Shelly.

64.     In early November 2024, Defendant Shelly proposed to Individual Plaintiffs that they should purchase a residential property near the Five Star warehouse to provide housing for corporate officers on occasions when they desired to stay near the warehouse and for employees working at the warehouse. Defendant Shelly's purpose in obtaining the residential property was to staff the Five Star warehouse with underpaid workers from India who would be enticed by the promise of available housing.

65.     On November 19, 2024, upon request from Defendant Shelly, Plaintiff Heena made a payment of $3,000 to the mortgage holder Once Team Abstract, LLC, as an initial deposit on a residential property located at 7228 Hegerman Street, Philadelphia PA 19135.

66.     On November 26, 2024, Plaintiff Heena made an additional payment of $131,968.47 to complete the purchase of the 7228 Hegerman property on behalf of Five Star.

67.     The 7228 Hegerman property has not been used to provide lodging for corporate officers as Defendant Shelly misrepresented in order to convince Heena to buy the building. Instead, Defendants Syed and Shelly have used it solely to provide housing to warehouse employees. The Honda minivan described above is used as a shuttle to bring the workers from 7228 Hegerman to the Five Star warehouse.

68.     By December 2024, Defendants had stopped providing information about the businesses to Individual Plaintiffs, who were growing frustrated at the lack of transparency and suspected that Defendants had engaged in self-dealing at the expense of Individual Plaintiffs and the business.

69.     On December 22, 2024, Plaintiff Raj requested a meeting with the other shareholders to discuss the accounting of Five Star and to understand how Plaintiffs' investment of approximately $640,000 had been utilized.

70.     On December 30, 2024, Plaintiff Raj sent a specific list of the documents he needed to review including general ledgers, financial statements, QuickBooks, incorporation documents, bank records, invoices, and copies of personal guarantees signed by Individual Plaintiffs for the benefit of the businesses.

71.     The shareholders agreed to meet on January 2, 2025 at the Northeastern warehouse in Connecticut. Defendants Amir and Mohammad were unavailable so Plaintiffs Raj and Heena met with Defendants Syed and Shelly at the Northeastern warehouse. The full shareholders meeting was then postponed until January 9, 2025, so that all shareholders could attend.

17

72.     On January 2, 2025, Defendants Syed and Shelly told Plaintiffs Raj and Heena that financial records, invoices and purchase orders could be found and reviewed at the Five Star warehouse.

73.     Also at the January 2, 2025 shareholders meeting, Plaintiff Raj requested access to the Five Star bank account, which was previously accessed via Defendant Syed's personal email address. Defendants agreed to link the Five Star company email to the bank account so that Plaintiff Raj could access the account consistent with his role as President of the company. However, Defendants once again locked Raj out of the company email account by changing the password shortly after the meeting.

74.     Defendants also told Plaintiffs Raj and Heena that the Five Star warehouse was stocked with inventory worth about $3 million.

75.     On January 3, 2024, Plaintiffs Raj and Heena visited the Five Star warehouse but only a small portion of the requested documents were there and there was a notable dearth of invoices and receipts to support Five Star's expenditures. Despite the limited scope of documents made available to Plaintiffs, they discovered a transaction from December 3, 2024, in which inventory was shipped from Five Star to Northeastern without any payment being made. Moreover, the inventory at the warehouse was limited, and it was clear to Plaintiffs that the value of the inventory was far less than the $3 million represented by Defendants.

76.     The shareholders met on January 9, 2025, but Defendants Syed and Shelly were only able to supply a small portion of the requested documents and information. Specifically, they provided Plaintiffs with a limited spreadsheet purporting to list business expenses and a small envelope containing receipts and invoices.

18

77.     Plaintiffs Raj and Heena immediately noted significant discrepancies on the spreadsheet supplied by Defendants, and a quick review of the receipts and invoices revealed that they were far short of being comprehensive.

78.     The lack of credible information caused Plaintiffs to realize that Defendants were apparently engaging in a fraudulent scheme highly similar to the one conducted by Defendant Syed that led to his felony conviction.

79.     In furtherance of Defendants' Syed and Shelly's fraudulent scheme, they had installed Northeastern employees, Usha Shree and Sudhir (last name unknown to Plaintiffs), to oversee the Five Star warehouse and track the receipts, invoices, and shipments in and out of Five Star. Upon information and belief, Defendants Syed and Shelly instructed Usha Shree and Sudhir to destroy and alter receipts and invoices so that Northeastern could understate the amount of inventory it acquired from Five Star and avoid paying the full amount of taxes due to the State of Connecticut for all of the cigars that were acquired by Northeastern.

80.     At the January 9, 2025 shareholders meeting, Defendant Syed attempted to justify the frequent and exorbitant transfers from Five Star to Northeastern by claiming that he had personally funded the construction at the Five Star warehouse, but he was unable to provide documents to verify these alleged expenditures.

81.     On January 16, 2025, Plaintiff Raj was removed from a company WhatsApp thread that had previously been utilized as an important means of communication within the business. From this point forward Raj was effectively cut off from communicating with Defendants or participating in the business in any way.

82.     On January 17, 2025, Defendants Syed, Shelly, Amir, and Mohammad executed a resolution to remove Plaintiff Raj, without cause, as a Director and as President of Five Star, effective immediately.

83.     On January 21, 2025, Plaintiffs received notice from Defendants' attorney stating that the majority shareholders had voted to remove Raj as a director and officer of Five Star.

## COUNT ONE – EQUITABLE ACCOUNTING
### *Plaintiffs v. Defendants Syed, Shelly, Northeastern, and Nominal Defendant Five Star*

84.     Plaintiffs incorporate by reference the averments set forth in Paragraphs 1 through 83 as though the same were fully set forth herein.

85.     Plaintiff Raj is a 20% shareholder in Five Star and was formerly the President of the corporation.

86.     Plaintiff Heena is an interested party in that she made monetary investments in Five Star and purchased the property at 7228 Hegerman Street which is held in the name of Five Star and utilized by and for the benefit of Defendants Syed and Shelly.

87.     Defendants Syed, Shelly, Amir, and Mohammad are each 20% shareholders in Five Star.

88.     As a shareholder in Five Star, Plaintiff Raj is entitled to review the books and records of account.

89.     Defendants Syed and Shelly have misappropriated and wasted the corporate assets of Five Star by transferring funds from Five Star to their separately owned business, Defendant Northeastern.

90.     Defendants Syed and Shelly have misappropriated and wasted the corporate assets of Five Star by selling Five Star's inventory to Northeastern without providing full compensation

and without accurately documenting the transactions in order to understate the amount of inventory purchased by Northeastern and avoid paying taxes to the State of Connecticut, all for the benefit of Northeastern.

91.     Defendants Syed and Shelly have breached their fiduciary duties to Five Star and engaged in self-dealing by funneling Five Star's inventory purchases through Northeastern in order to obtain manufacturers discounts, rebates, and access to limited-edition products for Northeastern instead of Five Star.

92.     Plaintiffs must be permitted to perform an accounting of the books and records of Five Star, including but not limited to all purchase orders, invoices, receipts, and banking records, to determine the extent to which Defendants have misappropriated, embezzled, and converted funds and inventory belonging to Five Star.

93.     Defendants Syed, Shelly, and Northeastern must also be required to provide documentation of all transfers of funds and merchandise between them and Five Star in order to determine the extent to which Defendants have misappropriated, embezzled, and converted funds, inventory, and sale proceeds belonging to Five Star.

94.     Plaintiffs Raj and Heena are also entitled to an equitable accounting of the Five Star books, records, and account statements in order to determine whether each of the Five Star shareholders made contributions in proportion to their ownership interest therein.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants Syed, Shelly, and Northeastern in the form of an Order requiring Defendants to produce all books and records necessary to show all funds and inventory acquired and relinquished by Five Star as well as documentation of all transactions between Defendants and Five Star.

## <u>COUNT TWO - CONVERSION</u>
### *Plaintiff Five Star v. Defendants Syed, Shelly, and Northeastern*

95.     Plaintiffs incorporate by reference the averments set forth in Paragraphs 1 through 94 as though the same were fully set forth herein.

96.     At all times material hereto, Plaintiff Raj was a 20% shareholder in Plaintiff Five Star and is accordingly authorized to bring this action derivatively on behalf of the corporation.

97.     Plaintiff Raj previously made a demand on the controlling shareholders to produce invoices, receipts, account statements, and other documents necessary to assess the propriety of transfers between Five Star and Defendants Syed, Shelly, and Northeastern. Defendants responded by providing incomplete information, terminating Raj as President of Five Star, then locking him out of any access to corporate documents and information.

98.     Any further demand on the controlling shareholders would be futile in light of the fact that the losses suffered by Five Star are the result of the controlling shareholders engaging in self-dealing and malfeasance, and that Plaintiffs' prior request for disclosure was denied and resulted in Plaintiff Raj's termination as President.

99.     Defendants Syed and Shelly have transferred funds from Five Star to their separately owned corporation, Defendant Northeastern, without providing adequate consideration to Five Star for the sale of Five Star product.

100.    At minimum, Defendants Syed and Shelly wrote checks from Five Star to Northeastern on August 27, 2024, October 25, 2024, October 29, 2024, and November 6, 2024, totaling $1,006,000.

101.    Defendants have also taken inventory from the Five Star warehouse and shipped it to Northeastern's Connecticut warehouse without providing fair compensation to Five Star or documenting the transaction with appropriate invoices and receipts.

22

102.    By funneling Five Star's inventory purchases through Northeastern, Defendants have taken valuable manufacturer rebates, discounts, sales proceeds, and access to limited-edition products rightfully belonging to Five Star and converted them for the benefit of Northeastern.

WHEREFORE, Plaintiff Five Star demands judgment in its favor and against Defendants Syed, Shelly, and Northeastern, in the form of an Order requiring Defendants to provide fair compensation to Plaintiff for all converted funds, inventory, manufacturer rebates and discounts, and sales proceeds along with interest, costs and fees.

## COUNT THREE – CONVERSION
### *Plaintiffs Raj and Heena v. Defendants Syed, Shelly, and Northeastern*

103.    Plaintiffs incorporate by reference the averments set forth in Paragraphs 1 through 102 as though the same were fully set forth herein.

104.    Plaintiffs Raj and Heena made monetary investments in Five Star totaling $500,000.

105.    Plaintiff Heena also purchased the residential property located at 7228 Hegerman Street in Five Star's name for $134,968.47.

106.    Defendant Syed convinced Plaintiffs Raj and Heena to make three payments of $100,000 each directly to Defendant Northeastern by misrepresenting that all of the funds would be used for the benefit of Five Star.

107.    The $300,000 that Plaintiffs paid directly to Northeastern was not all used to purchase inventory and equipment for Five Star, as was represented by Defendant Syed, but was instead converted and used for the benefit of Northeastern.

108.    Plaintiffs also made two deposits of $100,000 each into an account held in the name of Five Star but controlled by Defendants Syed and Shelly.

109.    The $200,000 that Plaintiffs deposited into the Five Star account was promptly transferred by Defendants Syed and Shelly to an account held by Northeastern.

110.    The property purchased by Plaintiff Heena on behalf of Five Star is being used by Defendants Syed and Shelly to provide housing for warehouse workers, at least some of whom are working for the benefit of Northeastern.

111.    The conversion of Plaintiffs' funds, inventory, perks and opportunities by Defendants Syed, Shell, and Northeastern, was malicious and borne of a wanton disregard for Plaintiffs' rights.

WHEREFORE, Plaintiffs Raj and Heena demand judgment in their favor and against Defendants Syed, Shelly, and Northeastern, in the form of an Order requiring an accounting of all funds invested by Plaintiffs and the return of all amounts converted for the benefit and use of Defendants Syed, Shelly, and Northeastern, along with punitive damages, interest, costs, and fees.

## COUNT FOUR – FRAUD
### *Plaintiffs Raj and Heena v. Defendants Syed and Shelly*

112.    Plaintiffs incorporate by reference the averments set forth in Paragraphs 1 through 111 as though the same were fully set forth herein.

113.    Defendants Syed and Shelly induced Plaintiffs Raj and Heena to invest in a new business venture by misrepresenting that the invested funds would be responsibly and appropriately applied for the benefit of the new business venture.

114.    In truth, the funds that Defendants solicited from Plaintiffs were used in furtherance of their scheme to embezzle Plaintiffs' funds and operate the newly formed business, Five Star, in a manner calculated to benefit Defendants Syed, Shelly, and their separately owned business, Defendant Northeastern.

24

115.    Defendants fraudulently induced Plaintiffs Raj and Heena to contributed money and labor to Five Star through misrepresentations including but not necessarily limited to:

    a.    Telling Plaintiffs that their investments would be utilized by and for the sole benefit of Five Star and Premium Cigars;

    b.    Telling Plaintiffs that the funds given directly to Northeastern would be used to purchase inventory and equipment for Five Star;

    c.    Telling Plaintiffs that transactions between Northeastern and Five Star were arms-length and fair transactions;

    d.    Telling Plaintiffs that the Five Star warehouse manager would account for all receipts and invoices and keep accurate records of the inventory going in and out; and,

    e.    Telling Plaintiffs that the 7228 Hegerman property would be used by and for officers of the company rather than to provide housing for warehouse employees, some of whom were working in the interest of Northeastern.

116.    In reasonable reliance on Defendants' misrepresentations, Plaintiffs invested $500,000 and purchased a house for $134,968.47 in the name of Five Star. Plaintiffs also spent $1,108.45 to purchase hotel rooms for Five Star employees.

117.    In reasonable reliance on Defendants' misrepresentations, Plaintiffs let Defendants and their associates take primary control of operations at the Five Star warehouse, which allowed Defendants to engage in self-dealing, convert the assets of Five Star, and transfer inventory to Northeastern in a manner calculated to avoid paying excise taxes to the State of Connecticut.

118.    As a result of their fraudulent scheme, Defendants have received benefits including, but not necessarily limited to:

      a.      The transfer of at least $1,006,000 from Five Star to Northeastern;

      b.      Shipping inventory to Northeastern without preparing corresponding invoices and receipts so that they could understate the value of merchandise acquired by Northeastern and avoid paying the full measure of excise tax due to Connecticut; and,

      c.      Funneling Five Star's inventory purchases through Northeastern so that Northeastern would receive the manufacturers discounts, rebates, and limited-edition products made available to wholesale purchasers and to misappropriate sales proceeds. As a result of Plaintiffs' reliance on Defendants' misrepresentations, Plaintiffs have lost the full value of their $636,076.92 investment.

119.    The fraudulent scheme perpetrated by Defendants Syed and Shelly was malicious and borne out of a wanton disregard for Plaintiffs' rights.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants Syed and Shelly in an amount in excess of $75,000 along with an award of punitive damages, interest, costs, fees, imposition of a constructive trust over (1) all funds invested in Five Star; (2) all funds invested in Five Star by way of Northeastern; (3) all funds transferred from Five Star to Northeastern; (4) all merchandise held in the Five Star warehouse; and (5) all merchandise sent from Five Star to Northeastern, and any other relief as may be deemed appropriate by this Court.

## COUNT FIVE – MINORITY SHAREHOLDER OPPRESSION
### (15 Pa.C.S. §1767)
### *Plaintiff Raj v. Defendants Syed, Shelly, Amir, and Mohammad*

120.    Plaintiffs incorporate by reference the averments set forth in Paragraphs 1 through 119 as though the same were fully set forth herein.

121.    At all times material hereto, Plaintiff Raj was a 20% shareholder in Five Star.

122.    At all times material hereto, Defendants Syed, Shelly, Amir, and Mohammad each held a 20% interest in Five Star and acted in concert to exercise control over the corporation.

123.    Plaintiff Raj reasonably expected that funds invested in Five Star would be used for the benefit of the business and not diverted to a business owned separately by Defendants Syed and Shelly.

124.    Plaintiff Raj reasonably expected that he, as a shareholder and President of Five Star, would have full access to corporate books, records, and accounts, and would be permitted to actively participate in business operations.

125.    Plaintiff Raj reasonably expected that he would not be terminated without cause from his role as President of Five Star simply because he sought access to corporate books, records, and accounts.

126.    Defendants Syed, Shelly, Amir, and Mohammad defied Plaintiff Raj's reasonable expectations as a shareholder by perpetrating and/or allowing the misappropriation and diversion of the funds Plaintiffs invested in the business, preventing him from accessing corporate books, records, and accounts, and by preventing him from overseeing or participating in the operation of the business.

127.    Defendants Syed, Shelly, Amir, and Mohammad acted oppressively toward Plaintiff Raj by freezing him out of the business and firing him as President after he demanded information about the use of his invested funds and the inventory acquired by and on behalf of Five Star.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants Syed, Shelly, Amir, and Mohammad, in the form of an Order requiring the involuntary dissolution of Five Star and the forced repurchase of his 20% interest for fair value along with an equitable accounting, imposition of a constructive trust over (1) all funds invested in Five Star; (2) all funds invested in Five Star by way of Northeastern; (3) all funds transferred from Five Star to Northeastern; (4) all merchandise held in the Five Star warehouse; and (5) all merchandise sent from Five Star to Northeastern, and any other relief deemed appropriate by this Court.

## COUNT SIX – BREACH OF FIDUCIARY DUTY
### *Plaintiffs Five Star and Raj v. Defendants Syed, Shelly, Amir, and Mohammad*

128.    Plaintiffs incorporate by reference the averments set forth in Paragraphs 1 through 127 as though the same were fully set forth herein.

129.    As controlling shareholders and officers of Five Star, Defendants Syed, Shelly, Amir, and Mohammad owed fiduciary duties to the corporation and to the other shareholders, including Plaintiff Raj.

130.    Defendants Syed, Shelly, Amir, and Mohammad specifically owed duties of loyalty and good faith to Plaintiffs Five Star and Raj.

131.    Defendants breached their fiduciary duties to Plaintiff Five Star by (1) diverting corporate funds to their separately owned business, (2) transferring inventory from Five Star to Northeastern without compensation or accounting, (3) funneling Five Star's inventory purchases through Northeastern in order to obtain for Northeastern the manufacturer discounts, rebates, and

limited-edition merchandise that should have gone to Five Star, and (4) misappropriating sales proceeds from Five Star to Northeastern.

132.    By breaching their fiduciary duties owed to Plaintiff Five Star, Defendants Syed, Shelly, Amir, and Mohammad have caused Five Star to lose money, inventory, and manufacturer discounts, rebates, and limited-edition merchandise without adequate compensation.

133.    Defendants Syed, Shelly, Amir, and Mohammad breached their fiduciary duties to Plaintiff Raj by (1) misappropriating the funds invested by him and on his behalf by Plaintiff Heena, (2) refusing to provide him with corporate books, records, and access to accounts, and (3) removing him from the business after he insisted upon receiving basic accounting information.

134.    By breaching their fiduciary duties owed to Plaintiff Raj, Defendants Syed, Shelly, Amir, and Mohammad have deprived him of the value of ownership and participation in the business.

WHEREFORE, Plaintiffs Five Star and Raj demand judgment in their favor and against Defendants Syed, Shelly, Amir, and Mohammad in an amount in excess of $75,000 along with an equitable accounting and award of interest, costs, fees, and any other relief deemed appropriate by this Court.

### COUNT SEVEN – CIVIL CONSPIRACY
*Plaintiffs v. Defendants Syed, Shelly, Amir, and Mohammad*

135.    Plaintiffs incorporate by reference the averments set forth in Paragraphs 1 through 134 as though the same were fully set forth herein.

136.    Defendants Syed, Shelly, Amir, Mohammad, and Northeastern agreed to engage in a conspiracy for the wrongful purpose of defrauding Plaintiffs Raj and Heena of the value and benefits of their $636,076.92 investment in Five Star and to convert the funds, inventory, and

manufacturers discounts, rebates, and limited-edition merchandise for the benefit of Northeastern.

137.    Defendants Syed and Shelly acted overtly and in concert in furtherance of the conspiracy by misrepresenting to Plaintiffs the nature of their investment in Five Star, by transferring funds from Five Star to Northeastern without adequate consideration, by funneling Five Star's inventory purchases through Northeastern in order to convert the manufacturers discounts, rebates, and limited-edition merchandise for the benefit of Northeastern, and by expropriating sales proceeds from Five Star.

138.    Defendants Syed, Shelly, Amir and Mohammad acted overtly in furtherance of the conspiracy by voting to terminate Plaintiff Raj as President of Five Star without cause after he requested access to corporate books, records, and accounts.

139.    As a result of Defendants' conspiracy, Plaintiffs Raj and Heena have lost the full value of their $636,076.92 investment in Five Star and Plaintiff Raj has been deprived of the value and benefits of being a shareholder and President of Five Star.

140.    As a result of Defendants' conspiracy, Plaintiff Five Star has lost money, inventory, and manufacturers discounts, rebates, and limited-edition merchandise, the value of which must be determined by an equitable accounting.

WHEREFORE, Plaintiffs Five Star and Raj demand judgment in their favor and against Defendants Syed, Shelly, Amir, and Mohammad in an amount in excess of $75,000 along with an equitable accounting and award of interest, costs, fees, and any other relief deemed appropriate by this Court.

## COUNT EIGHT – UNJUST ENRICHMENT
### *Plaintiffs v. Defendants Syed, Shelly, and Northeastern*

141.    Plaintiffs incorporate by reference the averments set forth in Paragraphs 1 through 140 as though the same were fully set forth herein.

142.    Plaintiffs Raj and Heena conferred a benefit on Defendants Syed, Shelly, and their separately owned business Northeastern, by depositing $200,000 into Northeastern's bank account and giving Defendant Syed a $100,000 cash payment which he received at the Northeastern warehouse in Connecticut.

143.    Plaintiffs paid the aforementioned amounts to Defendants because they believed they were investing in a new, joint business venture in which Plaintiff Raj would be a 20% shareholder and corporate officer.

144.    Defendants retained the monies contributed by Plaintiffs but did not provide consideration for these payments.

145.    Plaintiff Heena conferred an additional benefit on Defendants by purchasing the 7228 Hegerman property, which is now being used exclusively by Defendants.

146.    Plaintiffs Raj and Heena also conferred a benefit on Defendants by depositing $200,000 into the Five Star bank account, only for Defendants to subsequently transfer most or all of this amount to Defendant Northeastern and use Five Star's accounts and facilities for the benefit of Northeastern.

147.    Plaintiff Five Star conferred a benefit on Defendant Northeastern in the form of manufacturer discounts, rebates, and limited-edition merchandise that Defendants Syed and Shelly converted by funneling Five Star's inventory purchases through Northeastern.

148.    It would be inequitable for Defendants to retain the value conferred on them by Plaintiffs without providing adequate compensation.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants Syed, Shelly, and Northeastern in an amount in excess of $75,000 and equal to the benefits conferred upon and wrongfully retained by Defendants, as well as equitable relief in the form of:

    a.      A full accounting of (1) all monies invested in Five Star; (2) all expenditures made by Five Star; (3) all funds transferred from Five Star to Northeastern; (4) the manner in which the funds given by Plaintiffs to Northeastern were utilized; and (5) records reflecting all shipments and transfers of inventory between Five Star and Northeastern; and,

    b.      Imposition of a constructive trust on (1) all funds invested in Five Star; (2) all funds invested in Five Star by way of Northeastern; (3) all funds transferred from Five Star to Northeastern; (4) all merchandise held in the Five Star warehouse; and (5) all merchandise sent from Five Star to Northeastern.

Respectfully submitted,

/s/ Jack Meyerson
Jack Meyerson
Matthew Miller
MEYERSON & MILLER
1605 Market Street, Ste. 1305
Philadelphia, PA 19103
(215) 972-1376
Fax: (215) 972-0277