Jack Meyerson, Esq. (No. 16405)
Matthew Miller, Esq. (No. 309791)
MEYERSON & MILLER
1600 Market Street, Suite 1305
Philadelphia, PA 19103
(215) 972-1376
jmeyerson@meyersonlawfirm.com
mmiller@meyersonlawfirm.com

Patrcia A. Satiano, Esq.
Hellring Lindeman Goldstein & Siegel, LLP
103 Eisenhower Parkway
Roseland, NJ 07068
(973) 621-9020
pstaiano@hlgslaw.com

**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RAJ KATARIA, HEENA BHANUSHALI, and FIVE STAR CIGAR CORPORATION, | : | Civil Action |
| Plaintiffs, | : | No. 2:25-cv-01137 |
| v. | : | |
| SYED BOKHARI, SHALINDER NICHANI, AMIR WAQAR AHMED, MOHAMMAD ILLAHI, and NORTHEASTERN WHOLESALE ENTERPRISES, LLC, | : | JURY TRIAL DEMANDED |
| Defendants, and, | : | |
| FIVE STAR CIGAR CORPORATION, | : | |
| Nominal Defendant. | : | |

**PLAINTIFFS' MOTION FOR LEAVE TO REQUEST ADDITIONAL
OR ALTERNATIVE RELIEF IN THE FORM OF AN ORDER APPOINTING
A RECEIVER OR CUSTODIAN**

Plaintiffs Raj Kataria ("Raj"), Heena Bhanushali ("Heena"), and Five Star Corporation ("Five Star"), hereby request leave to supplement the relief sought in Plaintiffs' Motion for Preliminary Injunction to include additional or alternative relief in the form of an Order appointing an independent receiver or custodian to oversee the inventory purchases and sales of Five Star.

I. **Appointment of an Independent Receiver or Custodian is Warranted to Oversee Five Star's Merchandise Purchases and Sales and to Ensure that These Transactions are Properly Accounted For**

Plaintiffs' pending Motion seeks an Order requiring Defendants to hold $1,306,000[1] in constructive trust so that these fraudulently obtained funds will be available at the conclusion of this litigation and not otherwise disbursed or hidden. Upon consideration of Defendants' Opposition to the pending Motion, Plaintiffs hereby seek leave to supplement the request for relief to include not only the establishment of a constructive trust but also the appointment of an independent receiver or custodian[2] to oversee and account for Five Star's Merchandise Purchases and Sales. This supplemental or alternative relief is within the broad and flexible equitable powers of the Court to craft a remedy for minority shareholder oppression in a closely-held corporation.[3] *See also* Karpieniak v. Lowe, 747 A.2d 928, 931 (Pa. Super. 2000) ("An equity court may, of course, grant broader relief than that specifically requested when there is a prayer for general relief."); *see also* Lower Frederick Twp. v. Clemmer, 543 A.2d 502, 512 (Pa. 1988) (holding that the court's power to craft an equitable remedy includes "any appropriate relief that

---

[1] This number represents the $300,000 that Plaintiffs deposited directly into Northeastern as well as $1,006,000 that Defendants transferred from Five Star to Northeastern for no consideration.
[2] Plaintiffs are interviewing potential custodians and will be prepared to propose the appointment of a qualified individual at the upcoming hearing on May 14, 2025.
[3] A closely-held corporation is a corporation with 30 or fewer shareholders. 15 Pa.C.S. §1103.

2

conforms to the case made by the pleadings although it is not exactly the relief which has been asked for by the special prayer.").

Plaintiff's Complaint states a claim for Minority Shareholder Oppression pursuant to 15 Pa.C.S. §1767 as well as a related claim for breach of fiduciary duty, both of which invoke the equitable power of the Court to appoint a custodian. *See* Siegel v. Goldstein, 2023 U.S. Dist. LEXIS 28084 at *18-19 (E.D.Pa. 2023) ("Equitable relief is available to address a breach of fiduciary duty including oppression of a minority shareholder."). Substantive Pennsylvania law specifically authorizes the appointment of a custodian to manage the affairs of a business where, "in the case of a closely held corporation, the directors or those in control of the corporation have acted illegally, oppressively or fraudulently toward one or more holders or owners of 5 percent or more of the outstanding shares of any class of the corporation in their capacities as shareholders, directors, officers or employees. . . ." 15 Pa.C.S. §1767(a)(2). Oppression is defined generally as an "unjust or cruel exercise of authority or power." Leech v. Leech, 762 A.2d 718, 720 (Pa. Super. 2000) (*citing* Merriam Webster Collegiate Dictionary (10th ed.)). In the context of a claim for minority shareholder oppression, Pennsylvania courts have established that a majority shareholder acts in an oppressive manner when his or her actions frustrate the "reasonable expectations" of the minority shareholder. *See* Adler v. Tauberg, 881 A.2d 1267, 1269 (Pa. Super. 2005); *see also* Ford v. Ford, 878 A.2d 894, 900 (Pa. Super. 2019) ("Oppressive actions refer to conduct that substantially defeats the 'reasonable expectations' held by minority shareholders in committing their capital to the particular enterprise.") (*citations omitted*).

It is well-established that minority shareholder oppression is established by a showing that a shareholder was "frozen out" of participating in the business, or where the majority shareholder has engaged in self-dealing. *See, e.g.* Viener v. Jacobs, 834 A.2d 546, 553 (Pa.

3

Super. 2003) ("the trial court concluded that Jacobs, a majority shareholder, owed a fiduciary duty to Viener, as minority shareholder, and that Jacobs' conduct in "freezing out" Viener was outrageous and oppressive."); *see also* Ford v. Ford, 878 A.2d 894, 905-06 (Pa. Super. 2005) (upholding appointment of a receiver upon finding that majority shareholder in a golf course engaged in self-dealing by paying a nominal sum to the corporation in order to operate a pro shop on the premises).

Plaintiffs have pled, and will show at the upcoming hearing, that Raj was frozen out of Five Star and that Defendants Syed, Shelly, and Northeastern have engaged in self-dealing. Once a movant has shown oppressive conduct on the part of a majority shareholder, the Court is authorized to appoint a receiver or custodian. *See* Baron v. Pritzker, 52 Pa.D.&C. 4th 14, 23-4 (Ct. Com. Pl. Phila. 2001) *citing* ARC Manufacturing Co. v. Konrad, 467 A.2d 1133, 1138 (Pa. Super. 1983) *and* Simms v. Exeter Architectural Prods. Inc., 868 F. Supp. 668, 672 (M.D. Pa. 1994).

The appointment of a custodian is imperative in this matter in order to preserve the status quo while litigation is pending because Defendants have demonstrated that they have no qualms about altering and deleting invoices, and that they are incapable of, or unwilling to, competently maintain the books and records of the business. *See* Exhibit A, Second Affidavit of Raj Kataria, ¶ 6. At the core of this dispute is the suspect arrangement by which Five Star acquires inventory from or through Northeastern. In the affidavit attached to Defendants' opposition papers, Syed attests that Five Star commenced its operations by using $1,063,871.10 invested by the shareholders to purchase inventory from Northeastern. *See* E.C.F. No. 21-2, ¶ 13. Invoices showing purchases by Northeastern that were supposedly "destined for Five Star" are attached to Syed's affidavit, but Defendants' pleadings and discovery responses are notably lacking delivery

receipts or any other information to indicate how, when, and in what amount merchandise was allegedly delivered to Five Star. Id.

As Plaintiffs allege in the Complaint, the dispute between the parties began to take shape in November 2024 when Raj noted that inventory was being shipped to Five Star without corresponding invoices, making it impossible to determine whether the merchandise in the warehouse corresponded to the payments provided to Northeastern by the individual shareholders and Five Star. See E.C.F. No. 1, ¶¶63 – 64. Since a large share of the shareholder investments were paid directly to Northeastern rather than Five Star, Defendants created a scenario in which (1) shareholders bought shares in Five Star by paying Northeastern; (2) Northeastern used those funds to purchase inventory that was shipped directly to its Connecticut warehouse; and (3) Northeastern shipped merchandise to Five Star without creating ledgers or any other means of accounting for those shipments. Five Star was effectively kept out of the loop regarding its own inventory purchases and receipts and Plaintiffs were rendered unable to track and account for Defendants' acts of self-dealing. The fact that Defendants failed to produce any documents reflecting the inventory that was shipped to or from Five Star underscores the necessity of appointing a custodian to prevent further self-dealing and to ensure that proper records are created and maintained.[4]

---

[4] In their opposition papers, Defendants provide further evidence of their failure to maintain records by averring that Raj was fired for "[withdrawing] nearly $32,000 (on January 9th and 10th, respectively) drawn on Five Star's CB account . . . [and] did not use the funds for any business purpose. E.C.F. No. 21-3, Deft's Memorandum of Law, p. 12. There was nothing mysterious or inappropriate about these transactions, as these funds were utilized to make payments on overdue invoices due to Resnick Distributors and Sinistro Cigars, two manufacturers supplying merchandise to Five Star. See Exhibit A, Second Affidavit of Raj Kataria, ¶¶ 22 – 25. As is set forth in Plaintiffs' Complaint and motion papers, Raj was fired after he demanded access to corporate books and accounts. Defendants' alternative explanation is simply an after-the-fact attempt to justify their oppressive actions.

Plaintiffs are additionally concerned that the other shareholders have not fairly contributed capital to Five Star to acquire their respective ownership interests. For example, Defendant Syed attests in his affidavit that he and Defendant Shelly arranged to acquire their shares in Five Star through "a combination of cash and discounts on merchandise from Northeastern." See E.C.F. No. 21-2, ¶ 11. The lack of detail regarding Defendants' the source, date, and manner of Defendants' investments is telling. For example, Syed attests that he has paid "more than $750,000 towards the lease for the commercial space, fitout of Five Star's business at 7950 State Road, Philadelphia, Pennsylvania, two commercial vehicles, Kataria's computers for Premium Cigars Depot Corporation ("Premium") and inventory." See E.C.F. No. 21-2, ¶ 12. Despite repeated requests, Defendants have not produced or attached any documents so substantiate this "more than $750,000" investment. The subsequent averment that "[Syed], along with Defendant [Shelly], have each individually contributed approximately $750,000.00 in capital investments and inventory from Northeastern." Id., at ¶ 23. Again, no documents have been produced or attached to substantiate this calculation. This statement also raises questions about why the individual shareholders and Five Star were paying Northeastern for inventory if that inventory was supposed to represent Defendants' proportional investment to acquire their shares of Five Star.

Installing an independent and appropriately qualified individual to oversee and account for Five Star's merchandise purchases and sales[5] will ensure that Syed and Shelly will not be able to take advantage of their controlling shareholder status to curate the information given the Plaintiffs and the Court or continue to engage in self-dealing with Northeastern to the detriment

---

[5] As will be demonstrated at the hearing on May 14, 2025, a comparison of the sales records and bank statements of Five Star shows merchandise being sold by Five Star with no corresponding deposit into the Five Star bank account.

6

of Five Star and its minority shareholders. Plaintiffs respectfully propose that the appointed custodian should have the role of approving and accounting for Five Star's inventory purchases and sales of inventory, as well as maintaining an accurate ledger of shipments to and from Five Star. Such an arrangement would not negatively impact Five Star's ability to do business, but would prevent Defendants from engaging in improper self-dealing and manipulating the books and records of Five Star for their financial benefit or to avoid liability in this litigation. Accordingly, the appointment of a custodian will enable the continued operation of Five Star while ensuring that Defendants cannot disrupt the status quo by virtue of their control over Five Star and Northeastern. *See* ARC Manufacturing Co. v. Konrad, 467 A.2d 1133, 1138 (Pa. Super. 1983) (Upholding appointment of a custodian to preserve status quo while continuing business operations).

## CONCLUSION

For the foregoing reasons, as well as those set forth in Plaintiffs initial Motion papers and the testimony and argument that will be presented at the upcoming hearing, Plaintiffs' Motion should be granted and the Court should exercise its equitable powers to appoint a custodian and to craft an appropriate preliminary remedy to ensure preservation of the status quo.

Respectfully submitted,

/s/ Jack Meyerson
Jack Meyerson, Esq.
Matthew Miller, Esq.
MEYERSON & MILLER
1600 Market Street, Suite 1305
Philadelphia, PA 19103