IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAJ KATARIA, HEENA BHANUSHALI, and FIVE STAR CIGAR CORPORATION, | Civil Action |
| Plaintiffs, | No. 2:25-cv-01137 |
| v. | |
| SYED BOKHARI, SHALINDER NICHANI, AMIR WAQAR AHMED, MOHAMMAD ILLAHI, and NORTHEASTERN WHOLESALE ENTERPRISES, LLC, | JURY TRIAL DEMANDED |
| Defendants, and, | |
| FIVE STAR CIGAR CORPORATION, | |
| Nominal Defendant. | |

### SECOND AFFIDAVIT OF RAJ KATARIA

I, Raj Kataria, being of full age and sound mind, hereby attest as follows:

1.  I am a Plaintiff in the above-captioned case and a 20% shareholder in Five Star Cigar Corporation ("Five Star").

2.  From the time of its incorporation in or around July 2024 through January 17, 2025, I was the President of Five Star.

3.  My term as President of Five Star ended on January 17, 2025 when the other shareholders, Defendants Syed Bokhari ("Syed"), ShalinderNichani ("Shelly"), Amir Waqar Ahmed ("Amir"), and Mohammad Illahi ("Mohammad"), voted to remove me as President without cause.

4. From June to November 2024, my sister, Plaintiff Heena Bhanushali ("Heena"), and I invested $500,000 in Five Star and made an additional investment in kind by purchasing a residential property in the name of Five Star for $134,968.47. The first $300,000 of our investment in Five Star was paid directly to Northeastern and Syed instead of Five Star because Syed insisted that large deposits into an account held by the new business would raise "red flags" with the bank. Those initial payments include $100,000 in cash that was handed to Syed at the Northeastern warehouse in Connecticut.

5. I am also aware that Defendants Syed and Shelly, when obtaining inventory for Five Star, have made the purchases in the name of Northeastern so that Northeastern can receive the discounts, rebates, and limited-edition merchandise that cigar manufacturers make available to wholesale purchasers, all of which would have gone to Five Star but for Defendants' funneling the transactions through Northeastern. Defendants represented that the inventory bought for Five Star through Northeastern would be sent to Northeastern, but they refused to create delivery receipts or shipping records to demonstrate that Five Star actually received all of the merchandise that was supposedly purchased on its behalf.

6. On one or more occasions, Defendants have shipped inventory from the Five Star warehouse to the Northeastern warehouse without providing documentation or explanation for what goods were being transferred and whether the transfers were supported by consideration. Defendants also installed an employee of Northeastern, Usha Shree, to oversee the operations at the Five Star warehouse and ensure that any invoices or ledgers reflecting the movement of goods to and from Northeastern could be discarded or manipulated to their benefit.

7. I am aware that Defendant Syed has written four checks from Five Star to Northeastern totaling $1,006,000 but I have not received an accounting or explanation of these

transfers. More specifically, on August 24, 2024, a check was written from Five Star to Northeastern for $225,000; on October 25, 2024, a check was written from Five Star to Northeastern for $386,000; on October 29, 2024 a check was written from Five Star to Northeastern for $185,000; and on November 6, 2024 a check was written from Five Star to Northeastern for $210,000.

8. Contrary to the assertions set forth in Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion for Preliminary Injunction and the affidavits attached thereto, Syed and Shelly did not permit me to access the full books and records of Five Star, nor could I gain "unfettered access" to the Five Star Citizens Bank account simply by visiting a local branch.

9. On November 18, 2024, I did visit my local Citizens Bank branch to obtain Five Star's bank statements but I was told that I had to gain account access online. I attempted to set up online access but the two-factor authentication code was sent to Syed's personal email address. At the time, Syed had stopped communicating with me and I was unable to access the Five Star account without the emailed code.

10. Defendants Syed and Shelly have sent certain Northeastern employees to work at the Five Star warehouse in order to control the flow of merchandise in and out of Five Star, and to manipulate the invoices, receipts, and ledgers for their individual benefit and for the benefit of Northeastern.

11. Defendants' control over the Five Star warehouse, operations, and books and records, enables them to dissipate the assets wrongfully taken from Five Star, Plaintiff Heena Bhanushali, and me, and to alter and destroy the evidence necessary to calculate the damages they have caused.

12. In my capacity as a shareholder and President of Five Star, I made numerous requests to Syed and Shelly to supply me with a list of all inventory purchases made by Northeastern allegedly on behalf of Five Star along with documentation to show that the merchandise purchased by Northeastern was ultimately delivered to Five Star.

13. Northeastern has shipped certain inventory to Five Star but, despite my requests, Syed and Shelly have prevented Five Star from maintaining records of inventory received from Northeastern.

14. All proceeds for sales on behalf of Five Star are to be deposited into the Five Star business account at Citizens Bank. Due to a lack of cooperation from Syed and Shelly, I was unable to access the Citizens Bank account until January 3, 2025 after I had made multiple demands and attempts to view the Five Star books and records.

15. In an effort to understand how both the money that I had invested and the Five Star funds were being utilized for purchases of inventory and sales of product, on December 22, 2024 at 1:49 PM, I sent a text message to the other shareholders requesting a meeting to discuss the business and to review the accounting that had been performed up to that date.

16. My December 22, 2024 text message states as follows: "Hello Syed, Shelly, Amir and Zahir. I have been feeling better and [am] available to meet preferably next week. We can go over the progress and bring everyone up to date. We can discuss the workings and go over the accounting to date so that everyone was the clarity about the expenses during the meeting. I feel financial transparency is overdue and all the partners need to be clear about the respective contributions. We also need to discuss the business as it stands in its current state and if more improvements need to be made. What day is good for everyone to meet? Please get back to me by end of day tomorrow."

17. I followed up with a subsequent text message on Sunday, December 22, 2024 at 4:16PM to the shareholders stating the following:

"Please send an email with all the accounting including but not limited to:

    a. All the contributions from all partners monetary and in products including invoices and bank statements.

    b. All the payables including but not limited to salaries, build out, rent, etc.

    c. All the inventory on hand by companies

    d. A list of all the manufacturers and distributers that shipped the orders that were paid and have pending dollar amounts with the invoices (including Northeastern and WMD Maryland)

    e. Invoices of the orders that were picked up, delivered or shipped to (all receivables)

    f. This way everyone will have enough time to review and understand where the business stands."

18. On December 30, 2024 at 7:33PM I confirmed a meeting with the shareholders via email scheduled for January 2, 2025, where I wrote:

"Dear Syed Amir, Zaheer, and Shelly,

After further considering the January 2, 2025 meeting that we had all agreed to, Heena and I think that it makes much more sense for us to meet at Syed's place in Connecticut. A principal purpose of the meeting is for you to provide us with various books and records of the two corporations and you have told us those records are maintained by Syed at his warehouse in Connecticut. We propose meeting at the location, Northeastern Wholesale Enterprises, LLC, 222 Universal Dr., North Haven, CT 06478, at 11:00a.m. on January 2, 2025, to get copies of the

documents and various pieces of information, and to discuss the way forward. The copies of the documents and the information that we would expect to receive from you at that time, include the following:

1. The general ledgers for each of Five Star Cigar Corporation and Premium Cigars Depot Corporation, and any related financial statements.

2. The name and direct contact information for whoever is responsible for preparation of the financial books and records of Five Star and Premium, and confirmation of where the financial books and records are maintained.

3. If an accounting program such as QuickBooks or the like is used to prepare these financial records, the name of the program, and passwords and any other information required to allow us, or an accounting acting on our behalf, to access these financial books and records.

4. All signed corporate documents for Five Star and Premium, such as shareholders' agreements, resolutions, unanimous consents, stock certificates, stock books, meeting minutes, amendments, etc. or the same documents unsigned, to the extent the signed documents do not exist.

5. All bank records for all Five Star and Premium accounts, including monthly statements, and annual statements, if any, checks, deposits, wires, access/signature authorizations, account set up documents, etc.

6. Establish online access to the accounts for Heena and me.

7. All invoices paid by Five Star or Premium, or on which payments are still due, and any documents showing rent invoicing, or rent payments made, for the Philadelphia warehouse.

8. A document or documents showing your receipt of the $100,000 cash that we paid into the Five Star/Premium venture c/o Northeastern Wholesale Distribution, LLC.

9. Documents showing all personal guarantees signed by Heena and me relating to Premium or Five Star.

10. All documents showing the receipt or the use of the approximately $640,000 that we contributed to Five Star/Premium."

19. The shareholder meeting was postponed until January 9, 2025. Prior to the meeting, on January 2, 2025, Syed and Shelly represented to Heena and me that financial records, invoices and purchase orders could be found and reviewed at the Five Star warehouse.

20. On January 3, 2024, Heena and I visited the Five Star warehouse but only a small portion of the requested documents were there. The invoices and receipts were not sufficient to figure out how much inventory was or should have been at Five Star, nor were there invoices and receipts to support the expenditures that had been made by Five Star. The limited documents that were available immediately raised questions about how Syed and Shelly had been transacting business between Five Star and Northeastern. For example, I discovered a transaction from December 3, 2024, in which inventory was shipped from Five Star to Northeastern without any corresponding payment to Five Star. It also appeared clear to Heena and me that the value of the inventory at the Five Star warehouse was far less than the $3 million represented by Defendants.

21. Heena and I traveled to Connecticut for the shareholder meeting and to receive the requested documents on January 2, 2025. Syed and Shelly provided us with limited information including a spreadsheet that supposedly listed Five Star's expenses and a small envelope containing some receipts and invoices. These documents were insufficient to show

whether Five Star actually received the merchandise earmarked for it or whether it received the benefits of the manufacturer discounts and rebates. Heena and I demanded that we be given additional information at the shareholder meeting on January 9, 2025.

22. Instead of providing comprehensive information to Heena and I on January 9, 2025, Syed and Shelly became irritated by our requests and threw us out of the Five Star facility. On January 16, 2025, I was removed from a company WhatsApp thread that had previously been utilized as an important means of communication within the business. From this point forward I was effectively cut off from communicating with Defendants or participating in the business in any way.

23. On January 17, 2025, Defendants Syed, Shelly, Amir, and Mohammad executed a resolution to remove me as a Director and as President of Five Star, effective immediately.

24. In this litigation, Defendants have stated an after-the-fact rationalization for my termination by claiming that I withdrew nearly $32,000 on January 9, 2025 from Five Star's business account "without any apparent business purpose."

25. Instead, from January 9 through January 13, 2025, I made payments on behalf of Five Star toward satisfying overdue invoices from Resnick Distributors ("Resnick") and Sinistro Cigars ("Sinistro"). *See* Exhibit B, Resnick Invoice; Exhibit C, Resnick Payments; Exhibit D, Sinistro Invoice; Exhibit E, Sinistro Payments.

26. The payments to Resnick and Sinistro totaled $15,300 and $17,529.93, respectively. *See* Exhibit C, Resnick Payments; Exhibit E, Sinistro Payments.

27. I certify that the foregoing statements are true to the best of my knowledge, information, and belief. I understand that if any of the foregoing statements are willfully false that I will be subject to penalties.

Dated: 5/4/25          Attested By: _____
                                    Raj Kataria

Sworn to and subscribed before me

this 4th day of May, 2025

_____

Commonwealth of Pennsylvania - Notary Seal
PAMELA S MEYERSON - Notary Public
Philadelphia County
My Commission Expires April 4, 2028
Commission Number 1268726