IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| RAJ KATARIA et al., | : | |
| *Plaintiffs,* | : | |
|  | : | |
| v. | : | CIVIL NO. 25-1137 |
|  | : | |
| SYED IMRAN BOKHARI et al., | : | |
| *Defendants.* | : | |
|  | : | |

Scott, J.                                                                                                         August 11, 2025

## MEMORANDUM

Plaintiffs Raj Kataria, Heena Bhanushali, and Five Star Cigar Corporation ask this Court to grant a preliminary injunction against Defendants Syed Imran Bokhari, Shalinder Nichani, Amir Waqar Ahmed, Mohammad Illahi, and Northeastern Wholesale Enterprises, LLC. The injunctive relief that Plaintiffs seek is to order Defendants to place $1,306,000.00 in a constructive trust during the pendency of this litigation.

After two-and-a-half days of hearing the testimony of fact witnesses, the testimony of experts, the testimony of the receiver, and oral argument by counsel, the Court denies Plaintiffs' motion for a preliminary injunction, ECF No. 4, because Plaintiffs have not established a likelihood of success on the merits and have not established irreparable harm.

1

I.  **Background**

The Plaintiffs have operated successful retail cigar businesses in New York and New Jersey. The Defendants have operated successful wholesale businesses in Connecticut and Maryland. Hoping to leverage their collective expertise into a lucrative joint venture, the Parties created Five Star Cigar Corporation ("Five Star"), which basically operates as a warehouse and wholesale purchaser for Premium Cigar Depot, the Parties' shared retail cigar business. Complaint, ECF No. 1, ¶ 8. The Parties chose to construct the warehouse and incorporate Five Star in Pennsylvania because the Commonwealth imposes no excise taxes on premium cigars. *Id.* ¶ 3.

The Parties failed to memorialize clearly some of the key terms of this joint venture. They agreed that each Five Star shareholder would make an equal-sized contribution in exchange for a twenty percent stake, but there remains persistent disagreement about the composition of each contribution. *See* ECF No. 21-1 at 20 (documenting the share allocations for each shareholder in the Corporate Bylaws for Five Star Cigar Corporation). Plaintiff Bhanushali, on behalf of herself and her brother, Plaintiff Kataria, made a capital contribution of at least $600,000 through a combination of cash, wire transfers, and the purchase of a residence near the Five Star warehouse. Defendants Ahmed and Illahi each made contributions of $600,000 through combinations of cash and inventory for Five Star. *See, e.g.*, ECF No. 32-7 (text message between litigants stating the contribution amounts).

The contributions from Defendant Bokhari and Defendant Nichani are far more nebulous. All Parties appear to agree that their contributions were to have come from Defendant Bokhari's expenses incurred in outfitting the Five Star Warehouse (including through installing a point-of-sale system, a large humidor, etc.) plus stocking Five Star with sufficient initial inventory through leveraging Bokhari and Nichani's business relationships with premium cigar makers as a result of

their work for a separate wholesale cigar business, Northeastern Wholesale Enterprises ("Northeastern"), an additional defendant in this matter. *See, e.g.*, May 14, 2025 Prelim. Inj. Hr'g Tr., ECF No. 36, at 159:22–160:7 (Bokhari testifying that his and Nichani's contributions comprised inventory and construction of the warehouse). From Plaintiffs' view, Bokhari and Nichani were to have contributed approximately $1.2 million in premium cigars (less the costs of outfitting the Five Star Warehouse). *See, e.g.*, June 25, 2025 Prelim. Inj. Hr'g Tr. at 98:10–99:18; 103:11–104:11 (questioning whether Defendants' contributions included free inventory or strictly discounts on invoiced inventory). Conversely, Defendants' view was that Bokhari and Nichani were to have purchased inventory for Five Star—at Five Star's expense—but the inventory prices included the competitive discounts that Bokhari and Nichani enjoyed through their Northeastern affiliation; accordingly, Bokhari and Nichani viewed their contributions as comprising the total discounts off inventory—not the cost of the inventory itself. *Id.* at 107:21–108:8 (Defendant Nichani testifying that the contribution comprised the inventory discounts, not free inventory).

A few months after Five Star became operational, Plaintiff Kataria grew suspicious about whether and to what extent Defendants Bokhari and Nichani had made their contributions. ECF No. 1, ¶ 13. After Plaintiffs expressed dissatisfaction with Defendants' undeniably shoddy recordkeeping—shoddiness that has prevented Kataria and Bhanushali from understanding the extent of Defendants Bokhari and Nichani contributions—Defendants claimed that Plaintiff Kataria had abused his powers as President of Five Star and removed him as President (although he retained his twenty percent interest in Five Star). ECF No. 21-1, ¶ 41 (Decl. of Shalinder Nichani). Shortly after Kataria expressed his suspicions and Defendants removed Kataria as president, Kataria and Bhanushali initiated this lawsuit and filed their motion for a preliminary injunction, seeking to place some of Defendants' assets in a constructive trust.

On May 14, 2025, June 25, 2025, and July 2, 2025, the Court heard oral argument from counsel and testimony from Plaintiffs Bhanushali and Kataria; Defendants Bokhari, Illahi, and Nichani; Stephen Scherf, Plaintiffs' expert in forensic accounting; John O'Donnell, Defendants' rebuttal expert in forensic accounting; and Edmond George, the receiver appointed by this Court.

## II.    Discussion

Preliminary injunctive relief is an extraordinary remedy and requires the district court to exercise its discretion carefully. *Delaware State Sportsmen's Assoc. Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 197-99 (3d. Cir. 2024), *cert. denied sub nom. Gray v. Jennings*, 145 S. Ct. 1049 (2025). To obtain this remedy, Kataria and Bhanushali must establish that they are likely to succeed on the merits, that they are likely to suffer irreparable harm absent preliminary injunctive relief, that the balance of equities tips in their favor, and that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "The first two factors are the 'most critical.'" *Delaware State Sportsmen's*, 108 F.4th at 202 (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 971 (2009)). Here, Kataria and Bhanushali falter at each of the most critical factors.

A. Plaintiffs Have Not Shown A Likelihood Of Success On The Merits

To establish a likelihood of success on the merits, Plaintiffs must demonstrate that they "can win on the merits." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). Such a demonstration need not rise to being "more likely than not," *id.*, but it also must do "more than [show] a mere 'possibility' of relief." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (internal citation omitted).

This Court's review of the evidence suggests that Kataria and Bhanushali have failed to do more than show that they are possibly entitled to relief. They have presented extensive evidence

4

that Defendants and Five Star have horrendous recordkeeping practices, which has prevented Kataria and Bhanushali—who are understandably frustrated and worried about their investment into Five Star—from determining in what way and to what extent Defendants Bokhari and Nichani have made their contributions to Five Star or have otherwise used the Five Star joint venture for their own ends. Defendants, for instance, appear to ship inventory from cigar manufacturers to Northeastern and then reship those cigars to Five Star with only bills of lading that omit information about how many and what type of cigars are on the palettes that arrive to Five Star. (The only information that accompanies the shipments appears to be the total height and weight of the cigar pallets.) *See, e.g.*, May 14, 2025 Prelim. Inj. Hr'g Tr., ECF No. 36, at 227:21–228:20. But these shoddy practices—which may perhaps permit fraud—do not by themselves show that Plaintiffs are likely to succeed on the merits. Equally underdeveloped—due to a lack of discovery and evidence at this early juncture—are the expert opinions that are at loggerheads with one another. Plaintiff's expert, Stephen Scherf, has opined that Defendants' practices are at odds with industry norms and, therefore, suspicious; by contrast, Defendants' expert, John O'Donnell, does not justify the recordkeeping practices but downplays their significance. *Compare* Expert Rep. of Stephen Scherf, ECF No. 44-7, at 9-10 *with* Rebuttal Expert Rep. of John O'Donnell, ECF No. 44-8, at 5-6. At this stage of the proceedings, the Court's view is that the evidence before it suggests only the possibility of fraud but not a likelihood that Plaintiffs will succeed on the merits of their claims.

Put simply, the evidence before this Court does not establish that Plaintiffs have met their burden on this factor to warrant the extraordinary relief of a preliminary injunction.

B. Plaintiffs Have Not Shown Irreparable Harm

To establish irreparable harm, "a plaintiff must demonstrate harm which cannot be redressed by a legal or an equitable remedy following a trial." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994) (citation modified). As Plaintiffs obliquely acknowledge in their briefing, "[e]conomic loss does not constitute irreparable harm." *Id.*; ECF No. 4-4 at 5 ("In the context of a preliminary injunction, 'irreparable harm' is typically defined as an injury that cannot be compensated by monetary damages alone."); *see also Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801-02 (3d Cir. 1989).

Attempting to sidestep this principle, Plaintiffs invoke an exception. When a court has reason to believe that defendants may dissipate assets and otherwise render themselves judgment proof, then the court may order defendants to place money in a constructive trust during the pendency of the litigation. This preliminary relief ensures that plaintiffs will not be faced with an unsatisfiable money judgment should they ultimately prevail. ECF No. 4-4 at 5 ("A defendant's potential dissipation of assets, and the resultant probability of an unsatisfied money judgment[,] constitute a form of irreparable harm.").

As support for this exception, Plaintiffs point this Court to two unreported, decades-old cases. Unfortunately for Plaintiff, neither of these cases convinces the Court that a preliminary injunction is warranted here. In *JRNA, Inc. v. Snow*, 2007 WL 2253493, at *3-4 (E.D. Pa. Aug. 3, 2007), the Court granted a preliminary injunction that froze some of defendants' assets where there was concrete evidence that defendants were liquidating their assets and did not have other means to satisfy any potential judgment. Here, by contrast, Kataria and Bhanushali only provide contested evidence of potential fraud and unjust enrichment; they provide no evidence of Nichani, Bokhari, or the other Defendants liquidating assets to make themselves judgment proof.

Additionally, there is evidence that Defendants have sufficient assets to satisfy any potential judgment against them. Most obviously, Five Star continues to generate revenue and maintains an inventory of premium cigars. *See* July 2, 2025 Prelim. Inj. Hr'g Tr. at 23:11–24:7. Accordingly, *JRNA* is too dissimilar from the instant case to find its holding instructive.

Likewise, in *Allstate Ins. Co. v. Davidson Med. Grp.*, 2004 WL 2357797, at *3 (E.D. Pa. Oct. 18, 2004), the Court relied on an undisputed affidavit and an undisputed expert report to conclude that the plaintiffs faced irreparable harm due to a defendant's asset dissipation. The *Allstate* defendant failed to dispute the affidavit and expert report because he asserted his Fifth Amendment privilege against self-incrimination given the possibility of a potential criminal investigation. *Id.* at *1. Here, Bokhari, Nichani, and the other Defendants did not exercise their Fifth Amendment privilege. Rather, they contested most of Plaintiffs' testimony and Plaintiffs' expert report through their own testimony and the submission of their own rebuttal expert report. Consequently, none of the evidence that Kataria and Bhanushali presented throughout the two-and-a-half days of hearing is undisputed and sufficiently clear to conclude that they, like the *Allstate* plaintiffs, face irreparable harm absent a preliminary injunction.

Even assuming *arguendo* that the Defendants are deemed liable at trial, the Court sees no reason to doubt that Defendants have sufficient assets to provide Plaintiffs the appropriate relief.

### III. Conclusion

Plaintiffs gesture at smoke and ask this Court to extinguish a fire. But, for reasons explained above, the Court is not yet sure whether Plaintiffs are even gesturing at smoke. And if indeed they are seeing smoke, the Court cannot yet tell whether such smoke is from a harmful fire or from the innocuous puff of a premium cigar.

Accordingly, Plaintiffs' motion for a preliminary injunction (ECF No. 4) is **DENIED**.