IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAJ KATARIA et al., | : |
| *Plaintiffs,* | : |
| v. | : CIVIL NO. 25-1137 |
| SYED IMRAN BOKHARI et al., | : |
| *Defendants.* | : |

Scott, J.                                                                                                  December 2, 2025

## MEMORANDUM

Plaintiffs Raj Kataria, Heena Bhanushali, and Five Star Cigar Corporation ask this Court once again to grant a preliminary injunction against Defendants Syed Imran Bokhari, Shalinder Nichani, Amir Waqar Ahmed, Mohammad Illahi, and Northeastern Wholesale Enterprises, LLC. ECF No. 80.[1] Defendants filed a joint motion in opposition to the second motion for a preliminary injunction. ECF No. 81. The injunctive relief that Plaintiffs seek is to order Defendants to place $1,486,000.00 in a constructive trust during the pendency of this litigation—which is $180,000 more than they had sought to be place in a constructive trust in their first motion for a preliminary injunction. ECF No. 80-1 at 4.

---

[1] Plaintiffs' Counsel intimated in a telephonic status conference held on September 10, 2025 that Plaintiffs were considering filing a second motion for a preliminary injunction. The Court's view is that that intimation is not equal to a motion for leave to file a second preliminary injunction motion nor equal to a motion for reconsideration on the prior preliminary injunction motion—either of which seem to the Court more procedurally hygienic than Plaintiffs' elected route. Going forward, the Parties are hereby warned against filing motions that re-raise issues already decided by prior rulings without explicit permission from the Court.

The Court benefits from the two-and-a-half days of hearing the testimony of fact witnesses, the testimony of experts, the testimony of the receiver, and oral argument by counsel, all of which were considered when the Court denied Plaintiffs' first motion for a preliminary injunction. In addition to that evidence and the new round of briefing, the Court also benefits from consideration of three reports, ECF Nos. 62, 70, and 89, by Edmond M. George, the receiver appointed by the Court to oversee the operations of Five Star's business during the pendency of this litigation and to oversee a valuation of Five Star. *See* ECF No. 51 (Order Appointing Temporary Receiver).[2]

Because Plaintiffs still have not shown that the harm they face is legally irreparable, the second motion for a preliminary injunction, ECF No. 80, is denied.

## I.    Background

The Court assumes familiarity with the facts as discussed in its prior Opinion. *Kataria et al. v. Bokhari et al.*, 2025 WL 2312326 (E.D. Pa. Aug. 11, 2025) ("*Kataria I*"). Here, the Court briefly summarizes the findings of the Receiver's three reports as relevant to the ensuing discussion.

Mr. George's tenure as a receiver has been—in a word—tumultuous. As he has sought to discharge his Court-ordered obligations, he has faced a frustrating combination of what appears to be ineptitude and defiance, largely orchestrated by one or two individual Defendants. To start, the operational systems at Five Star—including systems for monitoring cash, for cleaning the walk-in humidor, for tracking products sold and tracking inventory, etc.—are woefully subpar. *See, e.g.*, ECF No. 60 at 3; ECF No. 89 at 3–7. Consequently, Mr. George has devoted significant time to straightening out these basic business practices.

---

[2] Defendants have indicated that they may file an objection to the latest report (ECF No. 89) from the receiver, but that looming objection does not affect the Court's disposition of the present motion, which is ripe for disposition.

But Mr. George has also encountered some difficulty from interested parties. Take, for instance, the curious case of Abdul Malik Subhan, who has claimed to be a sixth shareholder in Five Star's business. Mr. Subhan interrupted Mr. George during a call discussing inventory purchasing practices with a Five Star employee to gripe that verifying inventory and purchasing appropriate inventory, both of which are practices that any competent business should employ, was preventing Five Star from "opening its doors . . . ." ECF No. 70 at 5. Yet, further conversation with the Parties and their counsel has revealed that Mr. Subhan is actually an aspirational stakeholder, hoping to acquire Mr. Kataria's interest in Five Star at a later date although it remains unclear whether he has made a $180,000 contribution to Five Star at all. *See, e.g.*, ECF No. 89-1 at 3 ("No evidence located to support [Subhan's] contribution."). In his most recent report, Mr. George has explained that he now considers Mr. Subhan to be an earnest investor in Five Star, who was unaware of this ongoing action, the related difficulties surrounding the business, and the risks of doing business with figures like Syed Bokhari. *See, e.g.*, ECF No. 89 at 17 ("I [i.e., the receiver] believe that Malik [Subhan] is an honest person and operating FiveStar . . . in an appropriate and businesslike way . . . It does not appear that [Subhan] is aware of all of the issues at FiveStar.").

Most worryingly, Defendant Syed Bokhari appears to have devoted his energies to obfuscation and hindrance since the appointment of a receiver for Five Star. Apparently of his own volition and without permission from the receiver, Bokhari basically poached Irving Rodriguez, Five Star's lone salesperson, to work for Bokhari at Northeastern in a similar position and leaving Five Star without an experienced salesperson to liaise with potential customers. *Id.* at 5–6. Bokhari has also apparently lost interest in seeing Five Star succeed because he "has taken the position that he [via Northeastern's connection to cigar manufacturers] will no longer extend

credit to Five Star" and supposedly siphoned $180,000 of Subhan's investment in Five Star into a Northeastern bank account (instead of a Five Star account). *Id.* at 3, 11. All of this mischief is in addition to Bokhari's and Nichani's failing to properly insure Five Star's inventory, mistitling vehicles supposedly purchased for Five Star, and misclassifying workers for tax purposes.

Mr. George has also conducted a valuation of Five Star, including a summary of the "book value" of Five Star's assets. *Id.* at 21. That valuation suggests that Five Star has sufficient assets—even if such assets were to be sold at a significant discount during liquidation—to cover what Plaintiffs allege to be their monetary damages. *Id.*

## II. Discussion

As the Parties know well (because the Court has already said so in its prior Memorandum), preliminary injunctive relief is an extraordinary remedy and requires the district court to exercise its discretion carefully. *Delaware State Sportsmen's Assoc. Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 197-99 (3d. Cir. 2024), *cert. denied sub nom. Gray v. Jennings*, 145 S. Ct. 1049 (2025). To obtain this remedy, Kataria and Bhanushali must establish that they are likely to succeed on the merits, that they are likely to suffer irreparable harm absent preliminary injunctive relief, that the balance of equities tips in their favor, and that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "The first two factors are the 'most critical.'" *Delaware State Sportsmen's*, 108 F.4th at 202 (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 971 (2009)).

Like before, Plaintiffs fail to show that they face irreparable harm. This failure requires denial of their motion for a preliminary injunction.[3]

---

[3] The Court need not analyze the likelihood of success on the merits because Plaintiffs fail to establish irreparable harm. That said, this Court's view on that factor has softened. Based on the evidence before it, Defendants Bokhari and Nichani (among others) appear to have duped Plaintiff Kataria into investing into a company into which the Defendants did not intend to make equal contributions. But, even if this evidence remains uncontroverted throughout

4

A. Plaintiffs Have Still Not Shown Irreparable Harm

To establish irreparable harm, "a plaintiff must demonstrate harm which cannot be redressed by a legal or an equitable remedy following a trial." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994) (citation modified). As the Court has already explained, an injury that is compensable by money damages alone does not satisfy the irreparable harm prong. *Kataria I*, 2025 WL 2312326, at *3. In applying this rule to the instant case, the Court also explained why the "two unreported, decades-old cases" Plaintiffs relied on in the first motion—*JRNA, Inc. v. Snow*, 2007 WL 2253493 (E.D. Pa. Aug. 3, 2007) and *Allstate Ins. Co. v. Davidson Med. Grp.*, 2004 WL 2357797 (E.D. Pa. Oct. 18, 2004)—were distinguishable and not persuasive. *Kataria I*, 2025 WL 2312326, at *3.

Despite this analysis and guidance, Plaintiffs still cite only these two cases as support for their claim that "the resultant probability of an unsatisfied money judgment [may] constitute a form of irreparable harm." ECF No. 80-1 at 9. Because the Court has already explained that this principle does not apply to this action and Plaintiffs have pointed to no persuasive and no authoritative support that states otherwise, the Court finds that Plaintiffs have failed to make a showing of irreparable harm.

Even though Plaintiffs still cannot find support for their legally tenuous position in case law, they point to several new facts that supposedly suggest there is ongoing asset dissipation that may be sufficient to find irreparable harm. First, Plaintiffs suggest that "Defendants have repeatedly moved large sums of money from Five Star to Northeastern." *Id.* The transfers that Plaintiffs rely on occurred on October 28, 2024 and November 6, 2024—both of which predate this litigation, which commenced in March 2025. *Id.* at 9–10. To whatever extent Plaintiffs' legal

---

discovery, it does not entitle Kataria and Bhanushali—or any plaintiff alleging some type of fraud—to shortcut the litigation process and to have a judgment waiting for them in the form of a constructive trust once litigation concludes.

theory makes sense, it requires them to show that Defendants are actively dissipating assets *after* Defendants are on notice of impending litigation or *after* the litigation has commenced. Plaintiffs still have not provided this Court one concrete example of asset dissipation sufficient to justify a preliminary injunction.

Second, the post-litigation transactions between Northeastern and Five Star are difficult for the Court to parse at this juncture. Although there appears to be some gamesmanship and bitterness between the Northeastern Defendants and Five Star, those invoices and transactions at which Plaintiffs gesture do not rise to a level sufficient to grant Plaintiffs a preliminary injunction on the basis of finding irreparable harm. Because Five Star has employed shoddy business practices and recordkeeping, Mr. George has performed yeoman's work in deciphering who owes what and to whom and when, and that work is understandably still ongoing given the mess that Mr. George inherited from all Parties. Plaintiffs' handwaving at these difficulties is a far cry from "demonstrat[ing] [a] harm which cannot be redressed by a legal or an equitable remedy following a trial." *Acierno*, 40 F.3d at 653 (citation modified).

Third, Plaintiffs point to Defendant Bokhari's malfeasance throughout Five Star's tenure in the receivership. ECF No. 80-1 at 11–12. This point is a red herring. If anything, Bokhari's malfeasance goes toward Plaintiffs establishing a likelihood of success on the merits. Plaintiffs have failed to connect the dots regarding why Bokhari's actions throughout the receivership make their claim for monetary damages an irreparable injury. Even assuming for the sake of argument that all of Bokhari's malfeasance has occurred (which this Court has no reason to discredit at this point), the appropriate remedy for defying the Court-ordered receivership is sanctions, not a second-go at a preliminary injunction.

6

What especially sinks Plaintiffs' claim of irreparable injury is that Five Star is an operational, revenue-generating business, with an inventory valued at more than $3.2 million in its warehouse. ECF No. 89 at 21. Because the receiver will oversee the maintenance of this inventory and the operations of Five Star throughout his receivership, the Court remains confident that Five Star has sufficient assets to cover any judgments Plaintiffs may obtain against the Defendants.

### III. Conclusion

On Plaintiffs' telling, Raj Kataria and Heena Bhanushali fell victim to the fraudulent machinations of Syed Bokhari, Shelly Nichani, and others. Without formalizing their agreement in a written contract—the absence of which still stupefies the Court, particularly given the amount of money involved—Kataria and Bhanushali elected to give Bokhari and Northeastern at least $100,000 in cash and $200,000 in wire transfers. ECF No. 80-1 at 2 n.1. When their joint venture went sideways, Kataria and Bhanushali sued. Now, as the litigation plays out, Kataria and Bhanushali ask this Court to impose a constructive trust to preserve their money judgment in the event that they win at trial.

But the problem is that, in typical civil litigation, plaintiffs do not get to have their damages held in reserve on the chance that they win at trial. Preliminary injunctions are extraordinary, meaning that they require circumstances that go beyond the ordinary. Plaintiffs Kataria and Bhanushali are credulous investors that did not conduct their affairs with sufficient foresight to allay the effects of the fraud that they allege Bokhari and Nichani to have perpetrated. Although this no doubt makes them—like all fraud victims—somewhat sympathetic figures, it does not make their case an exceptional one. What they fail to appreciate most, even though the Court already explained it to them once and has now done so a second time, is that they are not legally

entitled to the constructive trust because the money damages that they have allegedly suffered do not constitute irreparable harm.

Accordingly, this Court denies for the second and final time Plaintiffs' request that they be granted a preliminary injunction in the form of a constructive trust. An appropriate order will be entered separately.