**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RAJ KATARIA et al.,** | : | |
| ***Plaintiffs,*** | : | |
| | : | |
| **v.** | : | **CIVIL NO. 25-1137** |
| | : | |
| **SYED BOKHARI et al.,** | : | |
| ***Defendants.*** | : | |

**Scott, J.** **August 18, 2026**

**MEMORANDUM**

Intervenor Plaintiff and Counterclaim Defendant Abdul Malik and Third-Party Defendant Syed Nasir have moved to dismiss the Amended Derivative Counterclaim and Third-Party Derivative Complaint (ECF No. 137) brought against them by Defendants and Derivative Plaintiffs Syed Bokhari and Shalinder Nichani on behalf of Five Star Cigar Corporation ("Five Star") in which Bokhari and Nichani allege that Malik and Nasir breached their fiduciary duties to Five Star. ECF Nos. 143, 144. For reasons explained below, the Court grants the motions to dismiss solely on the basis that Derivative Plaintiffs did not follow Pennsylvania law and Federal Rule of Civil Procedure 23.1.

## I. Background

For purposes of this motion, the Court limits its recitation of the facts to those alleged in the Counterclaim Complaint and Third-Party Complaint (ECF No. 137), although additional context that informs this dispute may be found in the Court's prior memoranda denying Plaintiffs' motions for a preliminary injunction. *See Kataria v. Bokhari*, 2025 WL 2312326, at *1–2 (E.D. Pa. Aug. 11, 2025); *Kataria v. Bokhari*, 2025 WL 3460110, at *1–2 (E.D. Pa. Dec. 2, 2025).

Derivative Plaintiffs Bokhari and Nichani each possess a 20% interest in Five Star, a wholesaler of premium cigars. Counterclaim Compl., ECF No. 137, ¶¶ 7–8 (hereinafter "Malik Compl."); *see also* Third-Party Compl., ECF No. 137., ¶¶ 7–8 (hereinafter "Nasir Compl."). Plaintiff Raj Kataria, Defendant Amir Waqar Ahmed, and Defendant Mohammad Illahi each possess interests worth 20% in Five Star as well. Malik Compl. ¶ 8; Nasir Compl. ¶ 8.

In February 2025, shortly before Kataria sued Bokhari, Nichani, Ahmed, and Illahi for fraud related to the agreement to fund and run Five Star, Ahmed introduced Counterclaim Defendant Abdul Malik to Bokhari. Malik Compl. ¶ 9–10. On March 11, 2025, after Kataria had initiated his own lawsuit, Malik proposed to buy Kataria's 20% interest in Five Star for $700,000. *Id.* ¶ 14.

All shareholders in Five Star—except Kataria—agreed to this proposal. ECF No. 137-3 at 2. According to the terms of the proposal, Malik was to deposit $350,000 to Five Star as a "prospective buyer" within thirty days of signing the agreement and was to pay the remaining $350,000 at closing "[i]f the deal goes through," which this Court presumes to have meant if Kataria agreed to sell his interest so that it may be available for Malik to purchase. *Id.* at 1.

The Derivative Plaintiffs allege that Malik paid $337,000.00 over the next thirty days. Malik Compl. ¶ 15. Of that deposit, $180,000.00 "of Malik's investment went to Northeastern as compensation for inventory it sold to Five Star." *Id.* ¶ 16.

Given the disarray of Five Star's operations after Kataria initiated his lawsuit and given Malik's inchoate interest in Five Star (which the Derivative Plaintiffs allege does not comprise any shares in Five Star but is rather an "equitable" interest" that is "drawn exclusively from the shares" of Bokhari, Nichani, Ahmed, and Illahi while the Kataria dispute remained unresolved), the Five Star shareholders hired Syed Nasir, whom Malik suggested, as the operations manager of

Five Star in March 2025. *Id.* ¶¶ 18–20; Nasir Compl. ¶ 19–21. Malik also assisted Nasir with managing the day-to-day operations of the store, even though Malik was not hired as an employee of Five Star. Malik Compl. ¶ 24.

Five Star is legally required to obtain, among other things, tobacco sales licenses from its customers to ensure that the company complies with the laws and regulations concerning tobacco products. *Id.* ¶ 25. Nasir and Malik were aware of this requirement, and Nasir enforced this requirement previously. *Id.* ¶ 26; Nasir Compl. ¶ 26. But the Derivative Plaintiffs allege that Malik and Nasir failed to collect required credentials for at least five wholesale clients, meaning that Five Star failed to collect certain taxes and failed to verify that its clients were appropriately licensed to purchase wholesale tobacco products. Malik Compl. ¶¶ 27–35; Nasir Compl. ¶¶ 23–27. Additionally, Malik and Nasir have failed to collect taxes on at least some sales made to certain clients and other clients have obtained, collectively, more than $350,000 in inventory from Five Star on credit and have yet to pay their debts. Malik Compl. ¶¶ 35–43; Nasir Compl. ¶¶ 30–41.

Derivative Plaintiffs Bokhari and Nichani, on behalf of Five Star, allege that Malik and Nasir have accordingly breached their fiduciary duties to Five Star.

## II. Discussion

### *A. Derivative Plaintiffs Have Failed To Abide By Federal Rule Of Civil Procedure 23.1*

Before shareholders can initiate an action to enforce the rights of a corporation, they first must "demonstrate 'that the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary circumstances.'" *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96 (1991) (citing *Ross v. Bernhard*, 396 U.S. 531, 534 (1970)). Federal Rule of Civil Procedure 23.1 outlines what shareholders bringing a derivative suit on behalf of a corporation must plead regarding their efforts at making a demand upon the corporation prior to bringing suit: derivative plaintiffs must "state with particularity . . . any effort by the plaintiff to obtain the desired action

from the directors or comparable authority and, if necessary, from the shareholders or members; and . . . the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1.

Because Five Star is a Pennsylvania corporation, Pennsylvania state law provides the substantive rules to determine whether plaintiffs have satisfied Fed. R. Civ. P. 23.1's pleading standard. *King v. Baldino*, 409 F.App'x. 535, 537 (3d Cir. 2010). Under Pennsylvania law, shareholders may maintain a derivative action only if they "first make[] a demand on the corporation or the board of directors requesting that the corporation bring an action to enforce the right" and the corporation either refuses to act after 60 days or does not object to the derivative action proceeding. 15 Pa. C.S.A. § 1781(a)(1).

There are exceptions to the demand requirement. As relevant here, Pennsylvania excuses the demand requirement prior to initiating a derivative action when the plaintiffs "make[] a specific showing that immediate and irreparable harm to the business corporation would otherwise result." 15 Pa. C.S.A. § 1781(b)(1). But even if demand is excused for this reason, "demand [still] shall be made promptly upon commencement of the action." 15 Pa. C.S.A. § 1781(b)(2).

The Parties agree that this is a derivative action and that Derivative Plaintiffs Bokhari and Nichani failed to make a pre-suit demand. Whereas Malik and Nasir thinks this ends the matter, Bokhari and Nichani think that they are excused from the demand requirement because they have made a specific showing of immediate and irreparable harm. *See, e.g.*, ECF No. 149 at 4. On the latter's view, "Malik's actions have placed Five Star in an indefensible position in the event of an audit by the Pennsylvania Department of Revenue." *Id.* But the harm of an audit is speculative, fretting over the possibility that Five Star will be exposed for not having paid its fair share of taxes due to its lax enforcement on the licensing requirement. The Pennsylvania statute at issue only excused demand for "*immediate* and irreparable harm." Because the harm that Bokhari and

Nichani complain of is not immediate, but rather hypothetical and speculative, they were not excused from making demand.

Bokhari and Nichani attempt to recast the harm, stating that perhaps it is not the harm of an audit or investigation, but rather the harm of several instances of a statutory violation that excuses demand. *See, e.g.*, Malik Compl. ¶¶ 38–39. To bolster this showing, the Derivative Plaintiffs cite to several cases that stand for the proposition that "[s]tatutory violations are sufficiently injurious to constitute irreparable harm." *See, e.g.*, *Shaeffer v. City of Lancaster*, 754 A.2d 719, 723 (Pa. Cmwlth. 2000); *Firearm Owners Against Crime v. Lower Merion Twnshp.*, 151 A.3d 1172 (Pa. Cmwlth. 2016). But in those cases, an injunction was sought to cease behavior that, if left unchecked, would expose the movants to continued statutory violations. Here, the Derivative Plaintiffs do not seek an injunction to cease ongoing statutory violations, but rather they seek to be excused from making demand on Five Star. The Court thus finds these cases of little persuasive value given the facts at hand and the posture of this Action.

What would be needed from the Derivate Plaintiffs are factual allegations that explain why the time needed to make demand would have subjected Five Star to irreparable harm. If, for some reason, time was of the essence, then perhaps the Court would entertain Five Star's claim of immediate and irreparable harm. But such allegations are lacking from the Complaints. At most, Five Star has implied that demand was futile because "Five Star's other two Board Members, Ahmed and Illahi, . . . declined to take any action" after learning of Malik and Nasir's failure to enforce the license requirement. Malik Compl. ¶ 40. But Pennsylvania law does not recognize demand futility as a legitimate excuse. *See, e.g.*, *Miller v. Native Link Constr., LLC*, 2017 WL 3536175, at *13 (W.D. Pa. Aug. 17, 2017) (observing that Pennsylvania applies a "stricter standard" than other jurisdictions concerning derivative litigation).

Moreover, Derivate Plaintiffs have made no such allegations. And the Court remains skeptical that they could do so. After all, the putative harm (understood in the second sense discussed above) has already occurred. From what the Court can discern, those harms would have become no more nor no less "irreparable" had they taken the time to make demand and to follow Pennsylvania law. Additionally, the Court remains unconvinced of the supposed irreparability of the harm, given that the likely harm from failing to pay taxes will be a monetary penalty, which is clearly not irreparable.

Because Derivative Plaintiffs fail to plead facts sufficient to meet state law demand requirements for a derivative action, the Court dismisses the Complaint under Fed. R. Civ. P. 23.1.

*B. Derivative Plaintiffs State A Claim For Breach Of Fiduciary Duty Against Defendants*

To state a claim for breach of fiduciary duty under Pennsylvania law, Derivative Plaintiffs must allege that: "(1) the existence of a fiduciary relationship; (2) the defendant's failure to act in good faith and solely for the benefit of the plaintiff with respect to matters within the scope of that relationship; (3) that the plaintiff suffered an injury; and, (4) that the defendant's failure to act was a 'real factor' in producing the plaintiff's injury." *Conquest v. WMC Mortg. Corp.*, 247 F.Supp.3d 618, 633–34 (E.D. Pa. 2017) (quoting *Dinger v. Allfirst Fin., Inc.*, 82 F.App'x 261, 265 (3d Cir. 2003)).

The disagreement between Defendants Malik and Nasir and the Derivative Plaintiffs concerns whether the Derivative Plaintiffs have sufficiently pled facts to make plausible that Defendants had fiduciary duties to Five Star. *See, e.g.*, *Save Our Saltsburg Schs. v. River Valley Sch. Dist.*, 285 A.3d 692, 700 (Pa. Commw. 2022) ("To prevail on breach of fiduciary duty claims, a plaintiff must establish that a fiduciary or confidential relationship existed between the plaintiff and the defendant."). "A fiduciary duty is the highest duty implied by law . . . [and it] requires a party to act with the utmost good faith in furthering and advancing the other person's interests."

*Yenchi v. Ameriprise Financial, Inc.*, 161 A.3d 811, 819 (Pa. 2017) (citations omitted). "A fiduciary relationship exists 'whenever one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms." *Reginella Const. Co., Ltd. v. Travelers Cas. and Sur. Co. of Am.*, 949 F.Supp.2d 599, 611 (W.D. Pa. 2013) (quoting *In re Estate of Clark*, 359 A.2d 777, 781 (Pa. 1976)).

The Derivative Plaintiffs argue that Malik and Nasir owed fiduciary duties to Five Star because each was an agent of Five Star. *NorthEast Metal Traders, Inc. v. TAV Holdings, Inc.*, 2020 WL 1244129, at *2 (E.D. Pa. Mar. 16, 2020) ("When a person authorizes another to act as his agent, the relationship between the two may be characterized as a fiduciary relationship."); *Yenchi*, 161 A.3d at 820. To establish a principal-agent relationship at this stage, Derivative Plaintiffs must allege: "manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking." *Basile v. H&R Block, Inc.*, 761 A.2d 1115, 1120 (Pa. 2000) (quoting *Scott v. Purcell*, 415 A.2d 56, 60 (Pa. 1980)).

Per the allegations, which the Court construes as true for purposes of this motion, Malik and Nasir are agents of Five Star. It is a reasonable inference at this stage of the proceedings that Five Star's provision of its customer list and vendors to Malik and to Nasir manifest an intent for the two to act on Five Star's behalf. *See, e.g.*, Malik Compl. ¶ 25. Five Star additionally hired, based on Malik's recommendation, Nasir to manage daily operations, and Malik participated substantially in those operations as well. Malik Compl. ¶¶ 18, 23; Nasir Compl. ¶¶ 18, 20–21. Both Malik and Nasir also accepted the undertaking insofar as they managed and performed the requisite work—including making employment and purchasing decisions as well as liaising with the receiver—at the Five Star warehouse. *See, e.g.*, Malik Compl. ¶¶ 25, 37; Nasir Compl. ¶¶ 24,

30–31. Finally, the allegations make plausible that the parties understood that the principal is to be in control of the undertaking insofar as Malik and Nasir held themselves out as Five Star employees and conducted business on behalf of Five Star by, among other things, sending emails under the Five Star email address and selling Five Star's inventory to customers. *See, e.g.*, Malik Compl. ¶¶ 27, 31–33, 39–40; Nasir Compl. ¶¶ 26, 30–31, 39–41. Accordingly, Derivative Plaintiffs have plausibly alleged that an agency relationship exists between Five Star and Malik as well as between Five Star and Nasir. Because an agency relationship exists, the relationship between, on the one hand, Nasir and Malik and, on the other hand, Five Star "may be characterized as a fiduciary relationship." *NorthEast Metal Traders, Inc.* 2020 WL 1244129, at *2.

Although the Parties do not contest this, the Court confirms that the Derivative Plaintiffs have sufficiently alleged the remaining elements to state a breach of fiduciary duty claim. Derivative Plaintiffs contend that Malik and Nasir sold inventory without abiding by licensing requirements, extended credit to their colleagues to acquire Five Star's inventory without ever collecting payments, and have even acquired inventory for themselves without paying Five Star. Malik Compl. ¶¶ 27–45; Nasir Compl. ¶¶ 26–41. These allegations make plausible that Malik and Nasir failed to act for Five Star's benefits, and that this failure has caused Five Star to incur financial injuries in the form of lost inventory, outstanding debts, and failure to collect taxes.

## III. Conclusion

For the reasons stated above, the Court grants the motions to dismiss. Once Derivative Plaintiffs cure their failure to make demand, the Court will allow Derivative Plaintiffs to proceed with their breach of fiduciary duty claims against Defendant Nasir and Defendant Malik. An order follows.